[No. 37233.   Department One.   March 11, 1965.]

M. A. WEBSTER et al., Respondents, v. ROLAND E. SCHAUBLE et al., Appellants, ERNEST SCHAUBLE et al., Defendants.*

Brown & Thayer, for appellants.

Grant L. Kimer, for respondents.

HILL, J.—M. A. Webster[1] had an unfortunate experience as a result of probably unfair and certainly ruthless treatment by three brothers (Roland, Howard, and Albert Schauble[2]). The extent, if any, to which the Schaubles are legally liable for Webster's conceded financial losses, his loss of employment, and injuries to his reputation and standing in the brokerage community by reason of his association and experience with them, is the crux of this appeal.

*Reported in 400 P. (2d) 292.

[1]Our references will be to Webster as though he were the only plaintiff-respondent, although Mrs. Webster is a plaintiff-respondent also.

[2]These are the Schaubles, or the Schauble brothers, to whom we will be referring throughout the opinion as though they were the only defendants or appellants, although their wives are also defendants and appellants. Their father, Ernest Schauble, and his wife were originally defendants, but were dismissed from the action.

Webster, as an employee of others, had become an experienced broker in the agricultural commodities field. Desirous of participating in the profits of such a brokerage business, he joined the Schauble brothers in opening an agricultural commodity brokerage office in Spokane on March 1, 1962, under the name of Ag-Trade, Inc.[3]

The paid in capital with which the business opened was $15,000. Webster and each of the Schauble brothers put in $3,000, and their father, Ernest Schauble, put in the other $3,000. Each was issued 30 shares of stock. Webster secured his $3,000 by borrowing it from the Farmington State Bank. This extension of credit to Webster was arranged by the Schaubles, although they did not guarantee the payment. Webster and his wife signed the note, pledging their 30 shares of stock as collateral. Webster had been receiving a salary of $600 a month, and that was what he was to receive from Ag-Trade, Inc., as manager and treasurer; but an additional $50 a month was to be paid by Ag-Trade, Inc. to the bank to apply on the principal and interest on the Webster note.

The Schauble brothers were all directors of Ag-Trade, Inc. Roland was president; Howard was vice-president; Albert was secretary; and Webster was treasurer.[4] The Schauble brothers determined the policies of the company

---

[3]We shall refer to the corporation as Ag-Trade, Inc., but the actual name is "AGricultural TRADers, Inc." At all times pertinent to this appeal the Schauble brothers operated a family partnership under the name of Inland Empire Milling Company which, in connection with other activities, also conducted an agricultural commodity brokerage business at St. John, Washington. A corporation of the same name had been formed but never activated. Instead of forming a new corporation for their venture with Webster, they changed the name to "AGricultural TRADers, Inc.," and reduced the capital stock to "500 shares at par value of $100.00 per share, constituting an authorized capital stock of $50,000.00."

[4]The minutes do not indicate that Webster was ever elected as a director. Whether or not he was, or should have been was one of the peripheral issues in this case. It seems to us quite immaterial, in the final analysis; the Schaubles had furnished most of the capital; had the majority of the stock and the majority of the directors; they intended to, and did, control the corporation.

and put restrictions and limitations on Webster, as manager, in doing business with certain concerns which they regarded as accounts of their partnership brokerage business. They also directed him not to do business with other concerns and individuals that they had found to be poor credit risks.

Whether Ag-Trade, Inc. was making a little money or losing substantial amounts was a hotly debated issue; but, in any event, on September 27, the Schaubles, as the controlling faction in the corporation, moved in and discharged Webster as manager, closed the office in Spokane, cut off the telephone, and moved the furniture and records to their place of business in St. John. They completed all contracts and commitments which Ag-Trade, Inc. had made, but sought no new business. Concerning the closing of the office, the trial court made the following finding:

" . . . That the action of the defendants as aforesaid, and Ag-Trade, Inc., in so doing was arbitrary and capricious, was ruthless and they acted without regard to the status of the plaintiff, whether he was treasurer, director or anything else and as a result injured the reputation of the plaintiff. That a miniature panic was created by the sudden and abrupt closing of the office, calling into question immediately the status of the plaintiff as a broker, because of the pending transactions produced an indication of a shortage, which was untrue but reflected upon the reputation of the plaintiff with those connected with the grain business." Finding No. 10.

Webster was left without any means of paying his note at the bank, on which $2,765 remained unpaid. He had not been able to secure other employment. He brought this action on the ground of fraud, claiming damages because of the amount due on the note, the loss of employment, and loss of reputation and standing in the community.

The final finding of the trial court was:

" . . . The plaintiff is entitled to six months additional salary at the rate of $600.00 per month, the amount he was receiving monthly when he was discharged, or a total of $3,600.00. . . ."

The judgment entered was for $3,600 against the Schauble brothers and their marital communities; and from this judgment they appeal.

This is not, as respondent asserts, a factual appeal. While the appellants make numerous assignments of error to specific findings of fact, we can accept all the findings of fact as verities and still be confronted with the real problem on this appeal: On what legal or equitable theory can the judgment be sustained?

The complaint was predicated on fraud, but the trial court made no findings that would support a recovery on that theory.

In conclusion of law No. 2, the trial court said:

" . . . The sudden discharge of the plaintiff and the shutting down of the Spokane office damaged the reputation of the plaintiff . . . in the sum of $3600.00, representing six months additional salary, at $600.00 per month, which the plaintiff, M. A. Webster, is entitled to."

■ However, the judgment cannot rest on any theory of wrongful discharge. There being no contract of employment for a specific period, the employer had the right to discharge Webster at any time with or without cause. *Lasser v. Grunbaum Bros. Furniture Co.* (1955), 46 Wn. (2d) 408, 410, 281 P. (2d) 832. The action is not even against the employer, Ag-Trade, Inc., but against the Schauble brothers as individuals. They were not his employers, nor did they contract to pay his salary or to guarantee his continued employment.

■ The only assistance which respondent gives us in his brief is to urge the applicability of the doctrine of "Corporate Opportunity." This rule is merely one of the manifestations of the generally recognized rule that demands of an officer or director the utmost good faith in his relations to the corporation which he represents. *Guth v. Loft, Inc.* (1939), 23 Del. Ch. 255, 5 A. (2d) 503. We find no cases applying this rule, except where the recovery is for the benefit of the corporation to which there was a duty of fidelity and good faith. The gist of such an action is to recover on behalf of the corporation for a breach of duty

by an officer or director of the corporation, and it has no applicability to the present case which is not for the benefit of the corporation, but for the benefit of the discharged manager of the corporation.

We can appreciate the desire of the trial court to mitigate to some extent the effects of this seemingly arbitrary and ruthless act by the Schaubles in closing down this corporation. As a stockholder, Webster may have a legal right to sue on behalf of the corporation because of what was done; but as a salaried employee he seems to us to be without a remedy, when the corporation which employed him decided to close its office.

Finding no legal or equitable basis on which to support the judgment entered, it must be set aside and a judgment of dismissal entered.

ROSELLINI, C. J., OTT and HALE, JJ., and JOHNSON, J. Pro Tem., concur.