[No. 49592-1.   En Banc.   July 5, 1984.]

KENNETH L. THOMPSON, *Appellant,* v. ST. REGIS PAPER COMPANY, *Respondent.*

*Thomas C. Lowry,* for appellant.

*Eisenhower, Carlson, Newlands, Reha, Henriot & Quinn,* by *James F. Henriot* and *James M. Hushagen,* for respondent.

BRACHTENBACH, J.—Does a terminable at will employee have a cause of action for wrongful discharge when his employer summarily discharges him and gives no reason for so doing? The trial court granted the employer's motion for summary judgment and dismissed the employee's action. We reverse and remand for trial.

Reviewing all the material submitted in a light most favorable to the appellant, the nonmoving party, *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wn.2d 528, 530, 503 P.2d 108 (1972), the record establishes the following.

The appellant, Kenneth L. Thompson, began working for St. Regis Paper Company (hereinafter St. Regis) in 1963. There is no written agreement concerning his employment. In 1973 he was promoted into a management position, reaching the rank of divisional controller for the Distribution Yards and Industrial Supply Division of St. Regis in Tacoma, Washington. From 1973 through 1979 he received regular bonuses under the Management Incentive Compensation Plan. Throughout this period the appellant received no complaints or criticism from his superiors concerning his work. In December 1979, he received a merit pay raise.

Despite this apparent satisfactory service, on January 17, 1980, after 17 years of service, he was asked to resign for the benefit of himself and the company. The only reason given was that he "stepped on somebody's toes." Ironically, the next day he was awarded a $10,000 bonus for his last year's performance. St. Regis has refused to give any other reason for the discharge. Appellant's personnel records classify his termination as an involuntary separation and state that it was a "mutual separation for the best interest of employee and Company". His severance benefits were awarded under the St. Regis Policy and Procedural Guide section applicable to employees terminated for no cause.

Appellant sued and alleged in his complaint:

[St. Regis] acted dishonestly and without good faith in demanding the plaintiff's resignation for purposes not consistent with business of the defendant, and in viola-

tion of the agreement of employment of the plaintiff and defendant.

St. Regis refused to answer appellant's interrogatories directed at ascertaining the reasons for appellant's dismissal. Citing *Webster v. Schauble,* 65 Wn.2d 849, 400 P.2d 292 (1965), St. Regis argued that because appellant's employment was terminable at will, the inquiries were not relevant and would not lead to relevant evidence. Appellant's motion to compel answers was denied.

St. Regis moved for summary judgment arguing that the employment relationship was terminable at will and, therefore, no material issue of fact was presented. Respondent's supporting affidavit contained excerpts from appellant's deposition and the St. Regis Management Incentive Compensation Plan. St. Regis argued that the excerpts show that the appellant had merely a subjective belief that he would be terminated only with cause, which was an insufficient basis for finding an implied contract.

The appellant responded by filing his own affidavit and numerous exhibits, including St. Regis documents which indicate he was doing satisfactory work, excerpts from the St. Regis Policy and Procedural Guide, and St. Regis internal memoranda. The language cited in the Policy and Procedural Guide states: that terminations "will be processed in a manner which will at all times be fair, reasonable and just"; evaluation procedures for merit pay increase; a stated policy of promotion from within the company; and the existence of a 90–day probationary period for all employees. He also quotes an internal memorandum stating termination of controllers will be discussed before the fact between the corporate controller and divisional operations managers.

Appellant's principal argument was that the fact he was doing a good job, coupled with the quoted corporate policies, created an implied contract he would be fired only for cause. He also argued that signing an employment agreement assigning all inventions and patents to the employer constitutes sufficient additional consideration for an

implied contract. Lastly, he argued that he was fired because he instituted accurate accounting procedures in compliance with the Foreign Corrupt Practices Act of 1977, 91 Stat. 1494, and his summary discharge without approval of the corporate controller was intended to be a warning to all the divisional controllers.

The trial court granted St. Regis' motion. The court found that the exhibits concerning merit pay increases, and St. Regis' general policies of promotion from within were not relevant to termination proceedings. The court found that the remaining policies, fair treatment, a probationary period and review before the fact, did not create an implied contract and that no additional consideration was given. The court concluded that there was no material issue of fact. This conclusion was also the rationale for denying appellant's motion to compel St. Regis to answer his interrogatories.

I

■■ Both parties concede there is no formalized agreement concerning appellant's employment relationship with St. Regis. Generally, an employment contract, indefinite as to duration, is terminable at will by either the employee or employer. *Roberts v. ARCO*, 88 Wn.2d 887, 894, 568 P.2d 764 (1977); *Lasser v. Grunbaum Bros. Furniture Co.*, 46 Wn.2d 408, 410, 281 P.2d 832 (1955). However, such a contract is terminable by the employer *only for cause* if (1) there is an implied agreement to that effect or (2) the employee gives consideration in addition to the contemplated service. *Roberts*, at 894.

We agree with the trial court's conclusion that the employment contract between the parties was not terminable by the employer only for just cause.

Appellant argued to the trial court that he gave independent consideration when he signed an employment agreement assigning any inventions or patents during his employment to St. Regis. *Parker v. United Airlines, Inc.*, 32 Wn. App. 722, 649 P.2d 181 (1982) is on point. *Parker*

held that this type of agreement was not sufficient independent consideration because it merely defined the employee's required service, put him on notice and indicated his common law liability. *Parker,* at 726. Additionally, the employment agreement signed by the appellant in this case states

> In . . . consideration . . . [for] employment . . . during such times as may be *mutually agreeable* to said Company and myself . . .

(Italics ours.) This indicates that the employment relationship was terminable at will and not terminable for cause only.

Appellant also argues that based on St. Regis policies enumerated in its Policy and Procedural Guide, there was an implied contract that he would be discharged only with cause. In support he cites cases from other jurisdictions and asks us to adopt the rationale of those cases.

The trial court, relying on *Parker,* concluded that there was no implied contract. *Parker* held that the nonnegotiated unilateral grievance process did no more than implement a company policy to treat employees in a fair and consistent manner. Similarly, the 6–month probationary policy and statements by the employer's president did not imply termination for cause only. *Parker,* at 727. St. Regis' Policy and Procedural Guide is similar to the employee policy manual analyzed in *Parker.* The St. Regis Policy and Procedural Guide states that terminations will be handled in a fair, just and equitable manner and, thus, merely implements a company policy to treat employees in a fair and consistent manner. Our examination of the Policy and Procedural Guide and the entire record shows no evidence of an implied contract that appellant was to be discharged only for cause. The appellant only had a subjective understanding that he would be discharged only for cause which is insufficient to establish an implied contract to that effect. *Lasser v. Grunbaum Bros. Furniture Co.,* 46 Wn.2d 408, 413, 281 P.2d 832 (1955); *accord, Roberts v. ARCO, supra.*

Additionally, the cases cited by the appellant, *Toussaint*

*v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880 (1980) and *Pugh v. See's Candies, Inc.,* 116 Cal. App. 3d 311, 171 Cal. Rptr. 917 (1981) are distinguishable. In *Toussaint* the employee received oral assurance of job security before accepting employment and the company manual stated dismissal *for cause only. Toussaint,* at 614. *See Schwartz v. Michigan Sugar Co.,* 106 Mich. App. 471, 308 N.W.2d 459 (1981). Similar findings were made in *Pugh. Pugh,* at 317, 329 (verbal assurance from president of company and policy of terminating only for cause). Neither fact is involved in this case. Under *Roberts v. ARCO, supra,* and *Parker v. United Airlines,* the trial court correctly found that there was no implied contract that appellant would be discharged only for cause.

This conclusion, however, does not end our inquiry but rather presents its starting point. The employment relationship at issue is, under our prior case law, terminable at will by either the employer or employee for any reason without either incurring liability. *Roberts v. ARCO, supra.* In *Roberts,* however, we noted that a number of states have carved out exceptions to the common law rule and we implied that in the future we might also modify the employment at will doctrine. We stated "[w]hile the future of this doctrine is a compelling issue, it is one that must be left for another day and different facts." *Roberts,* at 898. That day has arrived.

## II

The employment at will doctrine is a court developed doctrine drawn from a 19th century treatise on the subject of master and servant. *See* H. Wood, *Master and Servant* 134 (2d ed. 1886). Citing the Wood treatise in 1928 we stated:

> The law of the case seems to be well settled, that a contract such as this constitutes an employment for an indefinite period and that such a contract may be abandoned by either party at will without incurring any liability therefor.

*Davidson v. Mackall–Paine Veneer Co.,* 149 Wash. 685, 688, 271 P. 878 (1928). *Accord, Webster v. Schauble,* 65 Wn.2d 849, 852, 400 P.2d 292 (1965); *Lasser v. Grunbaum Bros. Furniture Co.,* 46 Wn.2d 408, 281 P.2d 832 (1955). Wood's formulation, the "American rule", became the rule governing termination of employees and employers could discharge employees for no cause, good cause or even cause morally wrong without fear of liability.

The employer's absolute prerogative to discharge employees has not remained unconstrained, however. State and federal legislation has modified the rule. For example, the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) prohibits discharges of employees based upon race, color, religion, sex, or national origin. The State's counterpart, RCW 49.60.030 and .180, additionally prohibit discharges for any sensory, mental, or physical handicaps. Similar limitations on the employer's right to discharge are found in RCW 49.12.130 (industrial welfare), RCW 49.17.160 (industrial safety and health act), RCW 49.46.100 (minimum wage act), RCW 49.44.090 (violations—prohibited practices). This list is not exhaustive.

Commentators argue that despite legislation the employee is still left largely unprotected. Principal criticism is that the doctrine gives the employer unfettered control of the workplace and, thus, allows the employer to take unfair advantage of its employees. Additional criticisms are that the doctrine was formulated in the 19th century to limit the employer's duties to employees and, thus, accommodate the laissez–faire concepts of economic individualism and employee autonomy that were prevalent at that period. *See generally* Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty To Terminate Only in Good Faith,* 93 Harv. L. Rev. 1816 (1980); Blades, *Employment at Will vs. Individual Freedom: On Limiting the Abusive Exercise of Employer Power,* 67 Colum. L. Rev. 1404 (1967). At least two courts have noted that Wood's formulation is not even supported by the authority he cites in his treatise. *See Brockmeyer v. Dun & Bradstreet,* 113

Wis. 2d 561, 567 n.3, 335 N.W.2d 834 (1983); *see also Toussaint v. Blue Cross & Blue Shield, supra* (containing an analysis of the case law cited by Wood as support for his formulation of the rule).

Noting these criticisms, many state courts have modified the terminable at will rule. *See generally* Annot., *Modern Status of Rule That Employer May Discharge At–Will Employee for Any Reason,* 12 A.L.R.4th 544 (1982). The issue we must decide is whether we will also modify the common law terminable at will rule.

### III

A number of courts have utilized a contract theory as a means of ameliorating the harshness of the rule. One contract theory utilized by a limited number of these courts is the adoption of a "bad faith" exception. *See Monge v. Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549 (1974), *modified in Howard v. Dorr Woolen Co.,* 120 N.H. 295, 414 A.2d 1273 (1980). *Cleary v. American Airlines, Inc.,* 111 Cal. App. 3d 443, 168 Cal. Rptr. 722 (1980); *Fortune v. National Cash Register Co.,* 373 Mass. 96, 364 N.E.2d 1251 (1977); *Magnan v. Anaconda Indus., Inc.,* 37 Conn. Supp. 38, 429 A.2d 492 (1980); *Gates v. Life of Montana Ins. Co.,* 196 Mont. 178, 638 P.2d 1063 (1982). Generally, these courts hold that in every employment contract there is an implied covenant of good faith and fair dealing which limits the employer's discretion to terminate an at will employee. Appellant urges us to adopt this approach.

We do not adopt this exception. An employer's interest in running his business as he sees fit must be balanced against the interest of the employee in maintaining his employment and this exception does not strike the proper balance. We believe that

to imply into each employment contract a duty to terminate in good faith would . . . subject each discharge to judicial incursions into the amorphous concept of bad faith.

*Parnar v. Americana Hotels, Inc.,* 65 Hawaii 370, 377, 652

P.2d 625 (1982); *accord, Brockmeyer v. Dun & Bradstreet,* 113 Wis. 2d 561, 335 N.W.2d 834 (1983); *Daniel v. Magma Copper Co.,* 127 Ariz. 320, 620 P.2d 699 (Ct. App. 1980). Moreover, while an employer may agree to restrict or limit his right to discharge an employee, to imply such a restriction on that right from the existence of a contractual right, which, by its terms has no restrictions, is internally inconsistent. *Accord, Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983). Such an intrusion into the employment relationship is merely a judicial substitute for collective bargaining which is more appropriately left to the legislative process.

A second contractual approach adopted by a number of courts is that the employer's right to terminate an at will employee can be contractually modified and, thus, qualified by statements contained in employee policy manuals or handbooks issued by employers to their employees. *Accord, Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880 (1980); *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn. 1983); *Morris v. Lutheran Med. Ctr.,* 215 Neb. 677, 340 N.W.2d 388 (1983); *Southwest Gas Corp. v. Ahmad,* 99 Nev. 594, 668 P.2d 261 (1983); *Yartzoff v. Democrat–Herald Pub'g Co.,* 281 Or. 651, 576 P.2d 356 (1978); *Piacitelli v. Southern Utah State College,* 636 P.2d 1063 (Utah 1981); *Arie v. Intertherm, Inc.,* 648 S.W.2d 142 (Mo. Ct. App. 1983); *Osterkamp v. Alkota Mfg., Inc.,* 332 N.W.2d 275 (S.D. 1983); *Wagner v. Sperry Univac, Div. of Sperry Rand Corp.,* 458 F. Supp. 505 (E.D. Pa. 1978), *aff'd,* 624 F.2d 1092 (3d Cir. 1980). Under this approach the requisites of contract formation, offer, acceptance and consideration are necessary predicates to establishing that policies in an employment manual are part of the employees' original employment contract or part of the employment contract as modified by the parties. *See, e.g., Pine River State Bank v. Mettille, supra; but see Rosellini v. Banchero,* 83 Wn.2d 268, 517 P.2d 955 (1974) (modification requires consideration in addition to that promised in original contract). We agree with these cases that an employee and

employer can contractually obligate themselves concerning provisions found in an employee policy manual and thereby contractually modify the terminable at will relationship.

Independent of this contractual analysis, however, we hold that employers may be obligated to act in accordance with policies as announced in handbooks issued to their employees. When the employment relationship is not evidenced by a written contract and is indefinite in duration, the parties have entered into a contract whereby the employer is essentially obligated to only pay the employee for any work performed. In this contractual relationship, the employer exercises substantial control over both the working relationship and his employees by retaining independent control of the work relationship. Thus, the employer can define the work relationship. Once an employer takes action, for whatever reasons, an employee must either accept those changes, quit, or be discharged. Because the employer retains this control over the employment relationship, unilateral acts of the employer are binding on his employees and both parties should understand this rule.

However, absent specific contractual agreement to the contrary, we conclude that the employer's act in issuing an employee policy manual can lead to obligations that govern the employment relationship. Thus, the employer's reason for unilaterally issuing an employee policy manual or handbook, purporting to contain the company policy vis–a–vis employee relations, becomes relevant.

We are persuaded that the principal, though not exclusive, reason employers issue such manuals is to create an atmosphere of fair treatment and job security for their employees. *See, e.g., Parker v. United Airlines, Inc.,* 32 Wn. App. 722, 726–27, 649 P.2d 181 (1982).

> While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative

and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly. . . . It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices . . . [the policies] established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation *"instinct with an obligation"*.

(Italics ours.) *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 613, 292 N.W.2d 880 (1980). It would appear that employers expect, if not demand, that their employees abide by the policies expressed in such manuals. This may create an atmosphere where employees *justifiably rely* on the expressed policies and, thus, justifiably expect that the employers will do the same. Once an employer announces a specific policy or practice, especially in light of the fact that he expects employees to abide by the same, the employer may not treat its promises as illusory.

Therefore, we hold that if an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises *of specific treatment in specific situations* and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship. We believe that by his or her unilateral objective manifestation of intent, the employer creates an expectation, and thus an obligation of treatment in accord with those written promises. *See* Restatement (Second) of Contracts § 2 (1981) (promise is a manifestation of intention *to act or refrain from acting in a specified way,* so made as to justify a promise in understanding a commitment has been made).

It may be that employers will not always be bound by statements in employment manuals. They can specifically state in a conspicuous manner that nothing contained therein is intended to be part of the employment relationship and are simply general statements of company policy.

Additionally, policy statements as written may not amount to promises of specific treatment and merely be general statements of company policy and, thus, not binding. Moreover, the employer may specifically reserve a right to modify those policies or write them in a manner that retains discretion to the employer.

## IV

A growing majority of jurisdictions have also recognized a public policy exception to the common law doctrine and most have premised it upon tort principles.[1] The exception has been utilized in instances where application of the terminable at will doctrine would have led to a result clearly inconsistent with a stated public policy and the community interest it advances. *Roberts v. ARCO,* 88 Wn.2d 887, 897, 568 P.2d 764 (1977). The policy underlying the exception is that the common law doctrine cannot be used to shield an employer's action which otherwise frustrates a clear manifestation of public policy.

For example, in *Harless v. First Nat'l Bank,* 246 S.E.2d 270 (W. Va. 1978) a bank employee was discharged after attempting to make his employer comply with the state consumer credit and protection laws. The West Virginia Supreme Court held that despite the general rule, the bank

---

[1]The following jurisdictions have adopted an exception based upon public policy principles. *Keneally v. Orgain,* 186 Mont. 1, 606 P.2d 127 (1980); *Frampton v. Central Ind. Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973); *Sventko v. Kroger Co.,* 69 Mich. App. 644, 245 N.W.2d 151 (1976); *Brockmeyer v. Dun & Bradstreet,* 113 Wis. 2d 561, 335 N.W.2d 834 (1983); *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980); *Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981); *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974); *Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 417 A.2d 505 (1980); *Harless v. First Nat'l Bank,* 246 S.E.2d 270 (W. Va. 1978); *Palmateer v. International Harvester Co.,* 85 Ill. 2d 124, 421 N.E.2d 876 (1981); *Parnar v. Americana Hotels, Inc.,* 65 Hawaii 370, 652 P.2d 625 (1982); *Jackson v. Minidoka Irrig. Dist.,* 98 Idaho 330, 563 P.2d 54 (1977); *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512 (1975); *Tameny v. ARCO,* 27 Cal. 3d 167, 610 P.2d 1330, 164 Cal. Rptr. 839 (1980); *Cloutier v. Great Atl. & Pac. Tea Co.,* 121 N.H. 915, 436 A.2d 1140 (1981). Two courts have not explicitly adopted the exception but implied in dicta that they may. *Larsen v. Motor Supply Co.,* 117 Ariz. 507, 573 P.2d 907 (1977); *Abrisz v. Pulley Freight Lines, Inc.,* 270 N.W.2d 454 (Iowa 1978).

could be liable for wrongful discharge because the discharge would otherwise frustrate a clear manifestation of public policy, protection of consumers of credit. In contrast to the result reached in *Harless,* when the interest alleged by the plaintiff/employee has been found to be purely private in nature and not of general public concern, the general rule applied and no liability attached to the employer's action. *See, e.g., Campbell v. Ford Indus., Inc.,* 274 Or. 243, 546 P.2d 141 (1976) (employee/stockholder allegedly fired for pursuing stockholders' rights against employer).

█ We join the growing majority of jurisdictions and recognize a cause of action in tort for wrongful discharge if the discharge of the employee contravenes a clear mandate of public policy.

In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy. However, *courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject.*

(Italics ours.) *Parnar v. Americana Hotels, Inc.,* 65 Hawaii 370, 380, 652 P.2d 625 (1982).

We believe that this narrow public policy exception should be adopted because it properly balances the interest of both the employer and employee. The employee has the burden of proving his dismissal violates a clear mandate of public policy. Thus, to state a cause of action, the employee must plead and prove that a stated public policy, either legislatively or judicially recognized, may have been contravened. This protects against frivolous lawsuits and allows trial courts to weed out cases that do not involve any public policy principle. It also allows employers to make personnel decisions without fear of incurring civil liability. However, once the employee has demonstrated that his discharge may have been motivated by reasons that contravene a clear mandate of public policy, the burden shifts to the

employer to prove that the dismissal was for reasons other than those alleged by the employee. Thus, employee job security is protected against employer actions that contravene a clear public policy.

## V

To summarize: An employment contract indefinite as to duration, is terminable at will by either the employee or employer. But such a contract is terminable by the employer only for cause if (1) there is an expressed or implied agreement to that effect or (2) the employee gives consideration in addition to the contemplated service. *Roberts,* at 894. Moreover, promises of specific treatment in specific situations found in an employee manual or handbook issued by an employer to his or her employees may, in appropriate situations, obligate the employer to act in accord with those promises. Lastly, an employer can be liable in tort if he or she discharges an employee for a reason that contravenes a clear mandate of public policy.

Applying the foregoing to the facts before us, we reverse the trial court. Reviewing the material submitted for and against St. Regis' motion for summary judgment in the light most favorable to the employee, we believe material questions of fact are presented.

Initially, the record reveals that St. Regis issued an employee Policy and Procedural Guide manual. On this record we are unable to determine the effect of the manual in relation to the employment relationship; whether any statements therein amounted to promises of specific treatment in specific situations; if so, whether the appellant justifiably relied on any of those promises; and finally, whether any promises of specific treatment were breached. These questions present material issues of fact. Furthermore, we note that on this record material issues of fact exist as to whether, under traditional contract analysis, any provisions of the employment manual are part of the appellant's employment contract. For example, the parties may have contractually agreed that statements which are

general statements of policy, were to be part of their employment contract. While we have determined that there is no implied contract for termination only for cause, we cannot determine on this record that the parties did not enter into an express contract.

The appellant also argues that he may have been fired for instituting an accurate accounting program in compliance with the Foreign Corrupt Practices Act of 1977, 91 Stat. 1494. In general, this act makes it a crime to offer a bribe to foreign officials in order to obtain business. This act also requires any company subject to the reporting requirements of the Securities Exchange Act of 1934, 15 U.S.C. § 78a, to devise and maintain a system of internal accounting controls that ensures compliance with the anti-bribery provisions. Appellant alleged in his brief that St. Regis is subject to the reporting requirements of the Securities Exchange Act of 1934 and, therefore, had to comply with that act's accounting requirements.

The Foreign Corrupt Practices Act is a clear expression of public policy that bribery of foreign officials is contrary to the public interest and that specific companies, St. Regis for one, must institute accounting practices to ensure that this public policy is advanced. If appellant's discharge was premised upon his compliance with the accounting requirements of the Foreign Corrupt Practices Act and intended as a warning to other St. Regis controllers, as appellant alleges, then his discharge was contrary to a clear mandate of public policy and, thus, tortious. This allegation also presents a material issue of fact.

The trial court order granting St. Regis' pretrial motion for summary judgment is reversed. We also reverse the trial court's order denying appellant's motion to compel St. Regis to answer his interrogatories because the questions are relevant and may lead to admissible evidence. CR 26(b)(1); *Lurus v. Bristol Laboratories, Inc.*, 89 Wn.2d 632, 637, 574 P.2d 391 (1978).

We remand for further action consistent with this opinion.

WILLIAMS, C.J., and ROSELLINI, UTTER, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., concur.