[No. 53357-1. En Banc. October 27, 1988.]

JOHN R. STEWART, *Respondent,* v. CHEVRON CHEMICAL COMPANY, *Appellant.*

*Robert R. Redman, Sr.,* and *Susan Harrel Slothower* (of *Gavin, Robinson, Kendrick, Redman & Pratt, Inc., P.S.*), for appellant.

*Critchlow & Williams,* by *Matthew L. Rutt* and *David E. Williams,* for respondent.

CALLOW, J.—Chevron Chemical Company appeals from a judgment entered on a jury verdict in a wrongful discharge action brought by an employee, John Stewart. The jury determined that Chevron had breached an employment contract with Stewart by failing to abide by a layoff provision in its policy manual. We hold the layoff policy was not a term of Stewart's contract and reverse.

Stewart began employment with Chevron Chemical Company in 1954 pursuant to an oral agreement for an indefinite term. From 1959 until his termination he worked as a shift supervisor in Chevron's fertilizer production plant near Kennewick. Due to financial losses in its fertilizer division, Chevron management implemented a reorganization program in 1983 which included reducing the number of shift supervisors at the Kennewick plant from twelve to eight. Several Kennewick supervisors who had accrued the most seniority had the lowest performance rating. Since the responsibilities of the eight remaining supervisors would be significantly increased, Chevron decided to retain its best performers and based layoffs on the preceding 3 years' performance evaluations rather than on length of service. Stewart had the most seniority but the lowest performance rating and was one of the four discharged.

Stewart unsuccessfully appealed his termination through company grievance procedures. He then brought suit for wrongful discharge based on three grounds: (1) lack of just

cause; (2) age discrimination; and (3) breach of his employment contract by Chevron's failure to follow applicable termination procedures. The trial court determined Stewart's employment contract did not require just cause for termination and granted Chevron partial summary judgment on that issue. The jury ultimately found Stewart's discharge was not based on age discrimination. Stewart has not appealed either of these decisions; thus, the sole issue remaining is whether Chevron was contractually required to follow certain procedures prior to discharging Stewart.

Stewart based his breach of contract claim on § 380 of Chevron's policy manual, which states:

> In determining the sequence of layoffs due to lack of work, consideration should be given to performance, experience and length of service.

Stewart claims that this provision was an implied term of his employment contract requiring that he be discharged only after consideration of all three factors, and that Chevron breached the contract by terminating his employment solely because of his poor past performance.

At the close of Stewart's case and after presentation of all the evidence, Chevron unsuccessfully moved for a dismissal and a directed verdict on the grounds that the layoff provision was not a specific promise and that the policy manual provisions were not generally disseminated or communicated to employees. The trial court ruled as a matter of law that the language of § 380 constituted a promise of specific treatment and submitted to the jury the issue of whether that policy was part of Stewart's employment contract.

The jury found that Chevron had breached the employment contract based on § 380 and awarded $380,000 in damages. Chevron's motions for a judgment notwithstanding the verdict or in the alternative for a new trial were denied. Chevron appealed. We accepted direct review.

■■ Stewart relies on *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 223, 685 P.2d 1081 (1984), in support of his claim that Chevron's layoff policy became a binding

term of his contract. Generally, an employment contract indefinite in duration may be terminated at any time by the employee or the employer, with or without cause. *Roberts v. ARCO,* 88 Wn.2d 887, 891, 568 P.2d 764 (1977); *Webster v. Schauble,* 65 Wn.2d 849, 852, 400 P.2d 292 (1965). In *Thompson,* however, this court held that a terminable–at–will relationship may be modified and the employer contractually bound by promises of specific treatment made in employee manuals or handbooks. The court reasoned that established personnel policies may, in certain circumstances, create legitimate employee expectations that the policies will be binding.

> It would appear that employers expect, if not demand, that their employees abide by the policies expressed in [employee] manuals. This may create an atmosphere where employees *justifiably rely* on the expressed policies and, thus, justifiably expect that the employers will do the same. Once an employer announces a specific policy or practice, especially in light of the fact that he expects employees to abide by the same, the employer may not treat its promises as illusory.

*Thompson,* at 230. Therefore, the court held:

> [I]f an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises *of specific treatment in specific situations* and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship. We believe that by his or her unilateral objective manifestation of intent, the employer creates an expectation, and thus an obligation of treatment in accord with those written promises.

*Thompson,* at 230. *See also Brady v. Daily World,* 105 Wn.2d 770, 774, 718 P.2d 785 (1986).

Chevron initially contends its policy manual was not part of the employment contract as it was a policy guide for management and was not communicated to employees. The jury was presented with conflicting evidence on this issue. We need not decide whether substantial evidence exists to

support the jury's finding that the policy manual was binding as we find that the trial court initially erred in ruling that the layoff provision constituted a promise of specific treatment in a specific situation.

The interpretation of a writing is a question of law for the court. *In re Estate of Larson,* 71 Wn.2d 349, 354, 428 P.2d 558 (1967); 4 S. Williston, *Contracts* § 616, at 649 (3d ed. 1961). Only those statements in employment manuals that constitute promises of specific treatment in specific situations are binding. *Thompson,* at 230. As the *Thompson* court noted, "policy statements as written may not amount to promises of specific treatment and merely be general statements of company policy, and thus, not binding." *Thompson,* at 231. The Restatement (Second) of Contracts defines a promise as

> a manifestation of intention to act or refrain from acting *in a specified way,* so made as to justify a promisee in understanding that a commitment has been made.

(Italics ours.) Restatement (Second) of Contracts § 2 (1981). *Accord,* 1 A. Corbin, *Contracts* § 13 (1963). A supposed promise may be illusory if it is so indefinite it cannot be enforced or if its performance is optional or discretionary on the part of the promisor. *Spooner v. Reserve Life Ins. Co.,* 47 Wn.2d 454, 458, 287 P.2d 735 (1955); *Sandeman v. Sayres,* 50 Wn.2d 539, 541, 314 P.2d 428 (1957); *Goodpaster v. Pfizer, Inc.,* 35 Wn. App. 199, 203, 665 P.2d 414 (1983).

Chevron's layoff policy states only that management "should" consider performance, experience and length of service in determining the sequence of layoffs. This does not create an obligation that Chevron will or must consider all three factors. "Should" may be interpreted as discretionary, indicating merely a recommendation or preference. *See Cuevas v. Superior Court,* 58 Cal. App. 3d 406, 409, 130 Cal. Rptr. 238 (1976); *University of South. Fla. v. Tucker,* 374 So. 2d 16 (Fla. Dist. Ct. App. 1979); *Magnuson v. County of Grand Forks,* 97 N.W.2d 622, 624 (N.D. 1959). Throughout other portions of the manual Chevron used the

terms "shall", "will" and "must", but in the layoff provision used "should", indicating Chevron intended that the provision be advisory. *See Magnuson,* at 624.

Furthermore, Chevron was only required to "consider" these factors; no relative weight or value is assigned to any of the criteria. Thus, even if Chevron had factored Stewart's length of service into its decision, it was not required to give that criterion more weight than performance, or any weight whatsoever if management deemed it inadvisable to do so. Thus the wording of § 380 does not set forth the specificity necessary to create a binding promise. In addition, Chevron's human resources manager, who formulated the severance plan for the fertilizer division, testified that he initially ranked the Kennewick supervisors according to their length of service but found that if seniority was used as the criteria for retention, several of the remaining supervisors would be the lowest performers. Therefore, Chevron management decided to use performance as the determining factor. The layoff policy was not a definite promise or commitment that Chevron would give more weight to seniority, as Stewart appears to argue, but was merely a guideline for management.

Further, we find no evidence that Stewart was aware of or relied on the layoff provision and was thereby induced to remain employed with Chevron. An employer is bound only by promises upon which the employee justifiably relied. *Thompson,* at 231, 233. Stewart testified he consulted the manual on several occasions to see what his rights were. He also testified that in 1967 or 1968 he turned down a job offer in reliance on the security of the policy manual claiming that the manual provisions provided job security. There is no evidence, however, that Stewart was aware of the company's layoff policy until after he was discharged. Stewart concedes this fact in his brief.

We conclude that Chevron's layoff policy was not part of Stewart's employment contract as the layoff policy was not a specific promise, and the policy was not relied on by Stewart.

Chevron raises additional assignments of error. Because of our holding, we need not address these other issues.

The judgment is reversed.

UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, and DURHAM, JJ., concur.

DORE, J. (dissenting)—I dissent.

The majority holds that a layoff provision in Chevron Chemical Company's Regulating Manual did not modify John Stewart's employment contract because it did not constitute a promise of treatment in a *specific* situation, nor was it relied upon by Stewart. The majority permits an employer to adopt an employee handbook and give the impression that policies will be followed and then renege on those policies. In its haste to deny Stewart's $380,000 damage award for his wrongful discharge, the majority ignores substantial evidence supporting the jury verdict. I would have affirmed.

### EMPLOYEE HANDBOOK

John Stewart was a dedicated and loyal Chevron employee for nearly 30 years. He began working as a "utility man" for Chevron's predecessor (California Spray Company) in 1954. Within 4 years, Stewart was promoted to the position of shift supervisor at Chevron's fertilizer plant near Kennewick. The record indicates that he received several commendations for exceptional work. He continued to work as a shift supervisor until he was wrongfully discharged in 1983.

As a shift supervisor, Stewart was not covered by a collective bargaining agreement; his employment was indefinite as to duration and could be terminated at will. Although under no obligation to do so, Chevron established a Regulating Manual to govern employment relationships.

In *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984), this court held that provisions contained in an employee handbook or manual may be considered binding terms of an at-will employment contract. An

employer may be bound by provisions contained in an employee handbook if

an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises *of specific treatment in specific situations* and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship.

*Thompson,* at 230. Whether an employee handbook provision is a promise of "specific treatment in specific situations" is a question of fact. *Thompson,* at 233; *accord, Brady v. Daily World,* 105 Wn.2d 770, 775, 718 P.2d 785 (1986). The jury was instructed on this issue and it found that Chevron intended to be bound by the personnel provisions contained in its manual.

The preface of the manual states that its basic purpose is "to assure equitable and uniform treatment of employees by enabling management to make similar decisions under similar circumstances. . ." Chevron Chemical Company, Regulating Manual, Preface (Dec. 1, 1972). Stewart and several managers at Chevron's Kennewick plant testified that they felt compelled to act in strict compliance with the manual and that they used the manual to answer employees' questions concerning various company policies such as vacation and sick leave. Furthermore, Chevron demanded that its employees follow the procedures set forth in the manual. For example, after Stewart was discharged, Chevron required that he follow the manual's procedures for appealing the termination decision.

The evidence at trial strongly suggests that Chevron expected, if not demanded, that its employees act in accordance with the provisions in the manual. Accordingly, the jury could find, as it did, that Chevron intended the manual to create an atmosphere of fair treatment and job security. Once having created such an atmosphere in the workplace, the personnel provisions contained in the manual became enforceable components of the employment relationship. *Thompson,* at 230.

The manual contained a specific provision for layoffs due to lack of work:

> 3 In determining the sequence of layoffs due to lack of work, *consideration should be given to performance, experience and length of service.* The basis for such determination should be thoroughly documented.

(Italics mine.) Chevron Chemical Co., Regulating Manual 380–1. Chevron promised that when a situation arose where employees were to be discharged due to lack of work, the company would consider performance, experience and *length of service* when making layoff decisions.

The jury found that Chevron failed to consider experience and *length of service* when it discharged Stewart. This court will not overturn a jury verdict when there is substantial evidence to support it. *Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc.,* 96 Wn.2d 939, 943, 640 P.2d 1051 (1982).

I find substantial evidence to support the jury verdict. In a confidential memorandum, the president of Chevron Chemical Company stated:

> The method for selecting surplus employees will be based on job performance–related factors i.e., the higher performers will be retained, the lower performers will become surplus and eligible for severance. . . . *PM&S has reviewed this proposal against the usual practice of using classification and seniority as the basis for determining surplus and concur that no legal impediments exist.*

(Italics mine.) Exhibit 22. This memorandum proves that it was the company policy to consider seniority in making layoff decisions. The memorandum is evidence that contrary to the usual company policy, seniority was not considered in this case.

Ignoring substantial evidence supporting the jury verdict, the majority holds, as a matter of law, that the layoff provision is not specific enough to constitute an offer because the word "should" may be interpreted as discretionary,

indicating that Chevron intended the provision to be advisory and nonbinding. Although it is true that in some circumstances the word "should" may imply discretion, the word also conveys the idea of a command or obligation. "Should", according to Black's Law Dictionary, is the past tense of shall and its use ordinarily implies a duty or obligation. Black's Law Dictionary 1237 (5th ed. 1979). Furthermore, Chevron's statement of its basic policy concerning termination of employment in pertinent part reads:

It is desired to keep terminations at a minimum, therefore, prior to any termination, *all pertinent factors will be given thorough consideration.*

(Italics mine.) Chevron Chemical Co., Regulating Manual 380–1. Chevron's use of the word "will" provides further evidence that the layoff provision is mandatory. At best, Chevron's use of the word "should" is ambiguous and therefore any doubt created by the ambiguity must be resolved against Chevron. *See Joinette v. Local 20, Hotel & Motel Restaurant Employees,* 106 Wn.2d 355, 364, 722 P.2d 83 (1986).

Chevron's promise to consider length of service is not illusory as the majority suggests. In *Thompson* at page 230, we stated that "[o]nce an employer announces a specific policy or practice, especially in light of the fact that he expects employees to abide by the same, the employer may not treat its promises as illusory." Chevron, having chosen to adopt a termination policy and having made the policy known to its employees, cannot now claim that the termination policy is illusory.

The majority implies that Chevron's termination policy was not communicated to Stewart because the manual was not distributed to all employees. Actual dissemination of an employee handbook is not required to create contractual rights. Whether an employee handbook has been communicated to employees is a question of fact. The evidence reveals that Chevron employees were made aware of the manual's existence through newsletters and a videotape

presentation. The manual's personnel policies and procedures were not kept confidential. Stewart, as a supervisor, had unrestricted access to the manual, and all other employees had access to the manual if they were accompanied by a supervisor. Although the manual's personnel policies were not distributed to each employee, the jury could find, as it did, that Chevron intended all employees to be aware of the policies and to comply with them.

Finally, the majority, in dicta and without analysis, suggests that an employee must be aware of and rely on a specific employee handbook provision. Employee awareness of a specific handbook provision is not a prerequisite to the enforceability of the provision.

In *Thompson* we stated:

> It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, *whatever the personnel policies and practices* . . . [the policies] established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation *"instinct with an obligation"*.

(Some italics mine.) *Thompson,* at 230 (quoting *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 613, 292 N.W.2d 880 (1980)). *Accord, Kinoshita v. Canadian Pac. Airlines, Ltd.,* ___ Hawaii ___, 724 P.2d 110, 117 (1986). We then stated that policies expressed in employee handbooks "may create an atmosphere where employees *justifiably rely* on the expressed policies and, thus, justifiably expect that the employers will do the same." *Thompson,* at 230. Thus, it does not matter that the employee knows nothing of the particulars of the employer's policies. Where an employer creates an atmosphere of fair treatment and job security reliance is presumed. *See Kinoshita,* 724 P.2d at 117; *Toussaint,* at 613 n.25; *Woolley v. Hoffmann–La Roche, Inc.,* 99 N.J. 284, 304, 491 A.2d 1257 (1985).

Here, Stewart was aware of the manual and he stayed on the job with a clear understanding that Chevron would

make decisions in accordance with the policies and procedures set forth in the manual. He testified at trial that the manual provided job security which induced him to turn down a job offer and remain with Chevron. Stewart testified as follows:

[Counsel] . . . Were you ever offered a position with any other employer or employers?
[Stewart] Yes . . .
    . . .
    . . . I was approached by . . . C & I [Girder]
    . . . I looked into what they had to offer, and they did not offer the security that I had with Chevron Chemical. The pay was probably better, but I didn't have the security.
[Counsel] In making that decision about C & I Girder, did you rely on the Chevron policy manual?
[Stewart] Yes, I did. I had protection in it.

Report of Proceedings vol. 4, at 544–45.

Stewart performed his job adequately and productively for nearly 30 years and had accrued more seniority than all other supervisors. Chevron promised that it would consider length of service if layoffs were necessary due to lack of work. Having made this commitment, Chevron must honor it. The jury was entitled to find that Chevron did not give any consideration to length of service and breached its contract when it discharged Stewart.

CONCLUSION

The jury found that Chevron's unilateral promise of specific treatment in a specific situation (*i.e.,* Chevron promised to consider "performance, experience and *length of service*" if an employee is to be discharged due to lack of work) (italics mine) became a part of Stewart's employment contract, and that Chevron violated its contractual obligation to consider all relevant factors, including *length of service.* I find substantial evidence to support the jury verdict of $380,000 against Chevron for breach of its employment contract with Stewart.

I would affirm the jury verdict.

PEARSON, C.J., concurs with DORE, J.

Reconsideration denied December 13, 1988.