Roger W. **KREIMEYER**, et al., Plaintiffs,

v.

**HERCULES INC.**, a Delaware Corporation, and Jon Peterson, Defendants.

No. 92–NC–088S.

United States District Court,
D. Utah,
Northern Division.

July 28, 1994.

Fred R. Silvester, Silvester & Conroy,
L.C., Claudia F. Berry, J. Michael Hansen,
Mark R. Gaylord, Charles P. Sampson, Suit-

ter, Axland & Hanson, William K. Nash, Richard E. Malmgren, W. Robert Wright, Holme Roberts & Owen, Salt Lake City, UT, Evan A. Schmutz, Hill Harrison Johnson & Schmutz, Provo, UT, Lawrence R. Dingivan, Purser Edwards & Shields, Salt Lake City, UT, for plaintiffs.

Keith E. Taylor, David A. Anderson, Michael A. Zody, W. Mark Gavre, Lois A. Baar, Parsons Behle & Latimer, Salt Lake City, UT, Brent H. Shimada, Hercules Inc. Bacchus Works, Magna, UT, John M. Crane, Jr., Brent E. Zepke, Hercules, Inc., Wilmington, DE, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST GEORGE K. MARCH

SAM, District Judge.

This matter came before the court on the defendants' motion for summary judgment against one of the 65 plaintiffs, George K. March ("March"). The defendants argue that March's age discrimination claim should be dismissed because March cannot show that their proffered reasons for his termination—his alleged low performance and a company-wide reduction-in-force—were a pretext for intentional discrimination. They argue that his implied contract claim should be dismissed because no such contract was formed or breached.

For reasons discussed more fully below, the motion is denied as to March's age discrimination claim and granted as to his implied contract claim.

### I. Standards for summary judgment

Summary judgment is proper where the pleadings and other documents of record "show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court must construe all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

A party seeking summary judgment always bears the initial burden of identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). However, once the moving party has carried its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed. R.Civ.P. 56(e)). The nonmoving party may not merely rely on the pleadings but must *"make a sufficient showing to establish the existence of an element essential to that party's case,* and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552 (emphasis added).

On a motion for summary judgment, the court does not weigh the evidence. Instead, the court inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

### II. Discussion

#### A. ADEA claim

Claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621–634, are "subject to the same indirect method of proof used in Title VII cases alleging discriminatory treatment." *Branson v. Price River Coal Co.,* 853 F.2d 768, 770 (10th Cir.1988). For the indirect method of proof, a plaintiff must present a *prima facie* case of employment discrimination and show that any legitimate, nondiscriminatory reasons the employer gave for its actions are merely pretexts for age discrimination. *Id.*

In their reply memorandum, the defendants concede that March has raised genuine issues of material fact as to the elements of a *prima facie* case, but they argue that they are nevertheless entitled to summary judgment because he cannot show that their legit-

imate reasons for terminating him, were pretexts.

As to pretext, the following facts are undisputed by the parties:

1. March was born on December 24, 1945.

2. He was hired by the defendant Hercules, Inc. ("Hercules") in July 1978 and worked up to the position of a Program Support Analyst 2.

3. He was qualified for his job, and his performance was satisfactory. However, his supervisors noted on his last three performance appraisals that he needed to improve his analytical skills.

4. March's immediate supervisor, Mark DeYoung ("DeYoung"), ranked March's performance 13th out of 14 Program Support Analysts that reported to him.

5. Howard Christy ("Christy"), manager of Program Support, asked DeYoung whether his ranking of these employees conformed with their performance appraisals. DeYoung admitted that his ranking was inconsistent with their performance appraisals.

6. Christy nevertheless relied on DeYoung's ranking in reporting March's performance as 38th out of 41 Program Support Analysts in the department.

7. Christy therefore recommended that March be terminated during the reduction in force. Christy testified that he did not consider March's age in making that recommendation.

8. Hercules' Policy Compliance Committee ratified Christy's recommendation to terminate March.

9. March testified that about 2 weeks before his layoff, DeYoung informed him that he would probably be laid off. During this conversation, DeYoung commented that he had hired two younger people in their twenties during the previous year and that these younger individuals had higher house payments and young children, in contrast to March.

10. March was laid off April 8, 1991.

11. Hercules retained two younger employees, Ronald Harmer and Carol Ahlman, as Program Support Analysts. Harmer was 26 years old Ahlman was 24 years old; they had both worked for Hercules for one year.

■ Construing these facts in the light most favorable to March, the court finds that March has also raised genuine issues of material fact as to pretext. March submitted evidence tending to show that Hercules disregarded March's performance appraisals in ranking his performance for purposes of the reduction in force and that March's immediate supervisor, DeYoung, made comments prior to March's termination which indicated that DeYoung discriminated in favor of younger employees.

Accordingly, the defendants' motion for summary judgment on March's ADEA claim is denied.

### B. Implied contract claim

It is undisputed that during the course of his employment with Hercules, March never saw or read any of Hercules' policies regarding reductions in force. He testified in his deposition:

Q: Are you claiming that Hercules violated any policy in laying you off the way that it did?

MS. BERRY: Objection, foundation.

Q: (By Ms. Baar) You can answer.

A: If Hercules violated any—

Q: —any policy, any company policy?

A: I never did see any company policy.

Q: So you don't—you don't know of any company policy that was violated in your being laid off?

A: That is correct.

(Ex. A to memorandum in support of motion, March Depos. at 92–93).

■ March argues that he is nonetheless entitled to assert a claim for breach of an implied contract, based on the language of those policies, because knowledge of the terms of an implied contract is not a required element of his claim. He relies on such cases as *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 613, 292 N.W.2d 880, 892 (1980), in which the Michigan Supreme Court held that an employment manual's terms were enforceable even though an individual plaintiff was unaware of those terms. In a subsequent case, the Michigan Supreme

Court explained the rationale of its decision in *Toussaint:*

> Under Toussaint, written personnel policies are not enforceable because they have been "offered and accepted" as a unilateral contract; rather, their enforceability arises from the benefit the employer derives by establishing such policies.

*Bankey v. Storer Broadcasting Co.,* 432 Mich. 438, 453, 443 N.W.2d 112, 119 (1989).

▇ Utah and a number of other jurisdictions follow a different rationale. Utah courts recognize that "an employee may use an employer's written policies, bulletins, or handbooks as evidence of an implied-in-fact contract." *Hodgson v. Bunzl Utah, Inc.,* 844 P.2d 331, 333 (Utah 1992). However, "for an *implied-in-fact contract* term to exist, it *must meet the requirements for an offer of a unilateral contract.*" *Johnson v. Morton Thiokol, Inc.,* 818 P.2d 997, 1002 (Utah 1991) (emphasis added).

▇ "Acceptance of offers" is described in §§ 50–70 of the Restatement (Second) of Contracts. Section 51 provides:

> Unless the offeror manifests a contrary intention, an offeree who *learns of an offer after he has rendered part of the performance* requested by the offer may accept by completing the requested performance.

(emphasis added). An employee accepts the offer of a unilateral contract in a policy handbook or manual "by remaining in his employment with knowledge of the terms of the offer." *Miller v. CertainTeed Corp.,* 971 F.2d 167, 172 (8th Cir.1992). *See Hoffman–La Roche, Inc. v. Campbell,* 512 So.2d 725, 737 (Ala.1987) ("By his retention of employment after he had become aware of the handbook (offer), [the employee] accepted the offer"). On the other hand, "performance completed before the offer comes to the offeree's knowledge does not have reference to the offer, and the terms of the offer are not satisfied by such action." Comment (a) to § 51.

▇ Thus, in the context of a suit for compensation, the elements of an implied-in-fact contract are:

> (1) the defendant requested the plaintiff to perform work; (2) the plaintiff expected the defendant to compensate him or her for those services; and (3) the defendant

knew or should have known that the plaintiff expected compensation.

*Davies v. Olson,* 746 P.2d 264, 269 (Utah App.1987). Under Utah law, where the plaintiff "could not have expected [the defendant] to pay him because he did not know of [the defendant's] existence," an implied-in-fact contract was not formed. *Knight v. Post,* 748 P.2d 1097, 1101 (Utah App.1988).

▇ In the context of an implied-in-fact contract based on an employer's policies regarding reductions in force, the plaintiff would satisfy the second element by showing that he expected the employer to follow certain terms of the policies during a reduction in force. A plaintiff who was unaware of the policies during the term of his employment, cannot make the necessary showing. *See Nielsen v. Crane Co., Inc.,* 809 F.Supp. 699, 702 (S.D.Iowa 1992) (granting summary judgment for employer on employee's claim of wrongful discharge where the employee "admitted in his deposition that he neither received nor was aware of [the employer's policy] manual"); *Stewart v. Chevron Chem. Co.,* 111 Wash.2d 609, 762 P.2d 1143, 1146 (1988) (where the employee conceded that he was not aware of the layoff policy until after he was discharged, the policy was not part of his employment contract).

Despite his deposition testimony, March explains that he was generally aware of a company policy:

> To the best of my recollection, I never saw any company policy regarding reductions-in-force. I had been told by numerous co-workers, however, that a reduction-in-force policy existed and that seniority was supposed to be a major factor in determining who to layoff during a reduction-in-force.

(¶ 12, Affidavit of George K. March).

In a similar age discrimination case, one of the plaintiff employees, Harold Scott, testified that he never read the employee manual but nevertheless "expected that layoffs would be determined by seniority." *Berry v. General Motors Corp.,* 838 F.Supp. 1479, 1495 (D.Kan.1993). The court found that his "knowledge of policies in a general sense [was] insufficient evidence that there was a mutual intent to be bound by the terms" of the manual; therefore, no implied contract

existed. *Id.* *See also, Jacobson v. Roadway Express, Inc.,* 1992 WL 176426 at 3 (D.Kan. 1992) ("While the terms of an employee manual can support a finding of implied contract, plaintiff's testimony is that she never read the manual and was not familiar with its provisions. Therefore, the manual cannot have formed the basis of any mutual intent to contract."); *Manning v. Cigna Corp.,* 807 F.Supp. 889, 893–94 (D.Conn.1991) and cases cited therein ("judges in this district have not hesitated to grant a defendant-employer's motion for summary judgment on [implied contract] claims in the appropriate circumstances," where the employee had insufficient awareness of the employer's policies for an enforceable contract to be formed).

In this case, March's knowledge of Hercules' policies in a general sense is likewise insufficient evidence and fails to raise a genuine issue of material fact as to the existence of an implied contract.

### III. Conclusion

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment is denied as to March's age discrimination claim and granted as to his implied contract claim.