Joseph MASSUCCO, Plaintiff–
Appellant,

v.

GROUP HEALTH COOPERATIVE OF PUGET SOUND, a Washington corporation, Defendant–Appellee.

No. 06–35361.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 15, 2007.

Filed Nov. 13, 2007.

Michael C. Subit, Esq., Frank Freed Subit & Thomas, LLP, Seattle, WA, for Plaintiff–Appellant.

Richard J. Omata, Esq., Jennifer Anne Burkhardt, Esq., Sarah Farley Kaltsounis, Esq., Karr Tuttle Campbell, Seattle, WA, for Defendant–Appellee.

Before: BEAM,* RYMER, and GOULD, Circuit Judges.

MEMORANDUM **

Joseph Massucco appeals a grant of summary judgment in favor of his employ-

---

* The Honorable C. Arlen Beam, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

er, Group Health Cooperative of Puget Sound, on his retaliatory termination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a), and the Washington Law Against Discrimination (WLAD), Wash. Rev.Code § 49.60.210(1), and his common law claim for wrongful termination in contravention of public policy. *See Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081, 1089 (1984) (en banc). As the parties are familiar with the factual record, we do not recount it here, except as necessary to explain our decision.

We review the district court's grant of summary judgment *de novo,* taking the evidence in the light most favorable to Massucco, the nonmovant. *Dominguez–Curry v. Nev. Transp. Dep't,* 424 F.3d 1027, 1033 (9th Cir.2005). Summary judgment is appropriate if no genuine issues of material fact remain and the moving party is entitled to judgment under the governing legal principles. *Moreland v. Las Vegas Metro. Police Dep't,* 159 F.3d 365, 369 (9th Cir.1998). Even where issues of fact remain, they will only preclude summary judgment if "they are material to the substantive claim at issue; that is, [if] they 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In this case, we recognize that Massucco contends that a factual dispute remains as to who made the final decision to terminate him. But, even if we disagree with the district court's reasoning on this particular issue, we may still affirm on any ground supported by the record. *A–Z Int'l v. Phillips,* 323 F.3d 1141, 1145 n. 3 (9th Cir.2003). Here, we may do so because we find such a factual dispute immaterial to the outcome of the case.

## I. Retaliatory Termination

Group Health was entitled to summary judgment on Massucco's retaliation claims. In support of these claims, Massucco contends he was forced to resign after complaining that his supervisor, Rick Dumas, was extending preferential treatment to another employee, Kate Young, because Dumas and Young are both Christians. At Massucco's July 2004 performance review, Dumas and Massucco disagreed over the score that Massucco should receive. Because Massucco believed that Dumas had given Young a favorable score at her review, Massucco walked out of the meeting and went directly to human resources to complain about Dumas' purportedly preferential treatment of Young. That same day, Group Health placed Massucco on administrative leave. Several days later, Massucco resigned in lieu of termination.

To carry his initial burden under Title VII, Massucco must show "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir.2000). Massucco's initial burden under WLAD is similar, but he need only show the protected activity substantially contributed to the adverse employment action. *Davis v. W. One Auto. Group,* 166 P.3d 807, 813 (Wash. Ct.App.2007). The district court found Massucco failed to meet this initial burden because he could not show a causal link between his complaints and his forced resignation.

█ Even if we were to conclude that the district court made a mistake in this regard, Group Health is still entitled to summary judgment. In the retaliation framework, if Massucco can establish a prima facie case, the burden shifts to his employer to articulate a legitimate, nondiscriminatory reason for the adverse em-

ployment action. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir.2003). Group Health met this burden: Massucco had a long history of disagreeing with coworkers and management, and Group Health ultimately forced him to resign only after he walked out of a performance review with Dumas. Thus, Massucco bears the burden of offering evidence that creates a genuine issue of material fact as to whether Group Health's proffered reason is merely a pretext for retaliation. *Id.*

Massucco can discredit Group Health's explanation by " 'directly persuading the court that a discriminatory reason more likely motivated the employer[,] or indirectly by showing that the employer's proffered explanation is unworthy of credence.' " *Id.* (alteration in original) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). To survive summary judgment, however, Massucco must provide evidence of pretext. *Id.* Here, Massucco relies on circumstantial evidence that is insufficient to create a genuine issue of fact as to pretext.

As evidence of pretext, Massucco points out that a letter given to him at his termination meeting contained several paragraphs detailing incidents actually involving another employee. Mitchell Turner, the author of the letter, later discovered that he had mistakenly included references to misconduct described in an old disciplinary memorandum for another employee that he had been using as a template. In addition, Massucco points to his past positive performance reviews and the fact that other employees at Group Health were not terminated for insubordination toward management.

We are satisfied that this evidence is insufficient to create a jury question as to pretext. There is absolutely no evidence that the inclusion in Massucco's termination letter of the paragraphs involving the other employee was anything other than a mistake on Turner's part. Group Health's failure to discipline or terminate other employees for alleged insubordination is not particularly probative of pretext either, as Massucco offers no evidence that any of these employees ever walked out of a performance review with a supervisor. *See Wall v. Nat'l R.R. Passenger Corp.*, 718 F.2d 906, 909 (9th Cir.1983) (employer's decision not to terminate white employees for insubordination not probative of pretext where black employee and white employees had different disciplinary records and thus were not similarly situated). Massucco's past performance reviews are similarly unconvincing, as they were completed *before* Massucco's ill-fated July 2004 review with Dumas.[1]

The unconverted evidence shows that Massucco abruptly walked out of his performance review with his supervisor after challenging the rating he was to receive and that Group Health immediately began disciplinary action against him for that action. These facts belie any reasonable inference that Group Health's proffered

---

1. Additionally, while these reviews are generally positive, we cannot agree that they undercut Group Health's contention that Massucco had a history of disagreeing with coworkers and management. Massucco's 2000 and 2002 reviews both mention his difficulty in dealing with conflict situations, and his 2002 review specifically mentions his difficulty in dealing with management directives. Also, we note that Massucco described his ongoing conflicts with Dumas, Young and another coworker in great detail in his briefs to this court. Thus, we agree with the district court that "[t]here is ... no dispute that Mr. Massucco was at times harshly critical of other employees ... including Mr. Dumas." *Massucco v. Group Health Coop. of Puget Sound*, No. CO5–342JLR, 2006 WL 1030203, at *1 (W.D.Wash. April 5, 2006).

reason for requesting Massucco's resignation masks some retaliatory motive. Accordingly, we are satisfied that the district court properly granted summary judgment to Group Health on Massucco's retaliation claims.

## II. Wrongful Termination in Contravention of Public Policy

■ Massucco's state common law claim also fails. To succeed on a claim for wrongful termination in contravention of Washington State public policy:

(1) The plaintiffs must prove the existence of a clear public policy (the *clarity* element)[;] (2) [t]he plaintiffs must prove that discouraging the conduct in which they engaged would jeopardize the public policy (the *jeopardy* element)[;] (3) [t]he plaintiffs must prove that the public-policy-linked conduct caused the dismissal (the *causation* element)[; and] (4) [t]he defendant must not be able to offer an overriding justification for the dismissal (the *absence of justification* element).

*Gardner v. Loomis Armored Inc.*, 128 Wash.2d 931, 913 P.2d 377, 382 (1996) (en banc) (emphasis in original). In support of this claim, Massucco contends that he was forced to resign partially because he complained that mismanagement of the programming department at Group Health could jeopardize patient safety, as the department was responsible for a computerized database of patient records. We conclude that Massucco cannot establish the jeopardy element of his prima facie case.

The purpose of the jeopardy element is to ensure that "an employer's personnel management decisions will not be challenged unless a public policy is genuinely threatened." *Id.* Thus, in some cases, an employee must show that the objected-to conduct actually violated clearly established public policy, such as that embodied

in a state statute. *Ellis v. City of Seattle*, 142 Wash.2d 450, 13 P.3d 1065, 1070–71 (2000) (en banc). Where an employee objects to conduct because it threatens imminent harm to public safety, however, the employee may establish this element merely by showing that he had an objectively reasonable belief that public safety would be threatened without his actions. *Id.* at 1071.

Massucco's vague complaint that a hostile work environment could ultimately affect Group Health and its patients does not suggest that he believed a computer failure was imminent in July 2004. As he was not objecting to conduct that presented an immediate threat to life and limb, he is not entitled to take advantage of the *Ellis* exception. *See id.* In any case, *Ellis* would be of little help to Massucco, as he was aware of a back-up system that, although apparently not ideal, would allow for the continued administration of food and medication in the event of a computer failure. Thus, it was not objectively reasonable to believe that a computer failure presented an imminent threat to public safety.

**AFFIRMED.**