BAKER, J.
THIS MATTER comes before this court on an appeal by Jerry Louie (“Louie”) from the Order of the Colville Tribal Court (“Tribal Court”), per the Honorable Cynthia Jordan. This order had dismissed Louie’s petition for review of a decision, after an evidentiary hearing, of the Administrative Hearing Officer (“AHO”), the Honorable S. Renee Ewalt. The Tribal Court’s and the AHO’s dismissal orders had the effect of upholding Louie’s termination from employment at Mill Bay Casino, an enterprise of the Colville Tribal Federal Corporation (“CTFC”). In 2012 Louie was terminated from his employment with CTFC without any prior progressive discipline. Louie challenged his termination through CTFC supervisors, to no avail. He then appealed to the AHO on numerous grounds, while also arguing that the AHO lacked subject matter jurisdiction to decide his appeal. After an evidentiary hearing and an adverse ruling by the AHO Louie sought review in Tribal Court and now this court on the basis of both the Colville Confederated Tribes’ Administra *138 tive Procedures Act (“APA”), CTC § 2-4-1 et seq., and the Colville Tribal Civil Rights Act (“CTCRA”), CTC § 1-5-1 et seq.
Athough for different reasons than those cited by the Tribal Court, we affirm.
Appellant Louie was represented throughout by attorney Mark J. Carroll. Appellee CTFC was represented throughout by attorney Timothy H. McLaughlin.
FACTS
The procedural facts are not in dispute, nor are the facts related to the history of Louie’s initial hire as an employee of the Colville Confederated Tribes (“CCT” or “the Tribes”), then of the Colville Tribal Enterprise Corporation (“CTEC”), and of his later retention as an employee of the Colville Tribal Federal Corporation (“CTFC”), appellee herein. Aso undisputed is the ownership of CTEC and CTFC and the adoption of the CTEC Employee Policy Manual, which later became the Employee Policy Manual of CTFC. Finally, it is not in dispute that CTEC’s (later CTFC’s) Employee Policy Manual, while emphasizing the at-will nature of CTFC’s employment except in certain instances, it also provided a mechanism for review of terminations by an administrative hearing officer (“AHO”) who is independent of the tribal entity, now CTFC. Later, a document called “Supplementary Procedures for Administrative Hearings” was generated.[1]
Jerry Louie became an employee of the Tribes in 1982. In 1996, however, he took a job with the Mill Bay Casino when the casino was owned and operated by the Colville Tribal Enterprise Corporation (“CTEC”), a wholly-owned corporation of the Tribes. In early 2006, while Louie was still an employee of CTEC, this court decided Finley v. Colville Tribal Services Corporation, 8 CCAR 38, 33 I.L.R. 6038 (2006), which established that Tobias Finley, at the time a seasonal employee of a previous wholly-owned enterprise of the Tribes, Colville Tribal Services Corporation (“CTSC”), possessed a property interest in his continued employment. CTSC had argued that its employee policy manual accorded no right of review for terminated seasonal employees, because, like new employees, they were subject to a “probationary status.” Construing CTSC’s employee policy manual against its drafter, CTSC, this court held on due process grounds that, like other Tribal employees accruing benefits while employed, Finley should have had the right to a review by an administrative law judge of the merits of the reasons for his termination.
Later in 2006, the Board of Directors of CTEC adopted an Employee Policy Manual (“EPM”), and existing employees, including Louie, were required to acknowledge that they were subject to the EPM’s terms and conditions in order to continue to work there. Louie complied with this request and kept his employment. Notably, the CTEC EPM explicitly and conspicuously[2] made all CTEC employees “at-will” employees and, although “guidelines” for progressive discipline were pro *139 vided, they were delineated as “guidelines” only, and not required to be followed in “appropriate circumstances,” going on to provide:
Nothing in this section [pertaining to progressive disciplinary guidelines] alters the at-will nature of the employment relationship between CTEC and its employees. This policy should not be construed as promising specific treatment in a particular situation.[3]
Clearly it was the intent of the CTEC EPM to avoid the implications of Finley. The CTEC EPM further provided that any future policies for the CTEC organization, with some exceptions, could be made only by action by the CTEC Board of Directors.[4]
In 2009, someone at CTEC developed “Supplementary Procedures” applicable to CTEC employment.[5] These “Supplementary Procedures” provided details for how administrative appeals would be handled, setting up specific mechanisms for such appeals in the event that all internal CTEC supervisory review of an employee’s termination had taken place and the employee still felt aggrieved.
Although Louie made various objections to hearing before an AHO and argued that the AHO process was not applicable to him, and moved the AHO to recuse herself for being biased, arguments addressed infra, he makes no argument that the particular AHO assigned was not an AHO anticipated by the Supplementary Procedures or—if the Supplementary Procedures were simply a staff-generated document—that they exceeded the authority of the staff. Nor does he challenge the propriety of the selection process for AHOs under the Supplementary Procedures, although he does take issue with the fact that he did not receive a copy of the Supplementary Procedures until after he had appealed his termination to the AHO. Nevertheless, Mr. Louie ultimately received a full evi-dentiary hearing before the AHO.
While the Employee Policy Manual is silent on this point, the Supplementary Procedures provide that the AHO hearing is the employee’s final remedy and explicitly state that no further review is allowed, to include any appeal to or review by Tribal Court or, indeed, by this court.[6] The Supplementary Procedures, along with the EPM, also contain language to the effect that sovereign immunity is not waived by any of their provisions.[7]
In 2010, the Tribes’ Business Council, the governing body of the Colville Confederated Tribes as the sole shareholder/owner of CTEC, transferred all of CTEC’s assets to CTFC.[8] All CTEC employees then began to be paid by and to receive benefits from CTFC rather than CTEC. No new policy manuals have been adopted since CTEC’s assets were transferred to CTFC, but it is undisputed that all obligations of CTEC (if any) under the CTEC EPM and Supplementary Procedures accompanied the transfer of assets.[9]
*140 Specifically in relation to Mr. Louie, the AHO made a number of Findings of Fact, to which Mr. Louie has not assigned error. While we emphasize that it is singularly unhelpful when a fact-finder, such as the AHO here, prefaces each “Finding of Fact” with the words, “X testified that ..[10] nevertheless it is clear from the AHO’s conclusions of law and, especially, the lengthy discussion in the “Order” section of her written decision, that she adopted the testimony of CTFC’s witnesses and largely discounted that of Mr. Louie. It is on this basis that we recite the following facts.
On April 17, 2012, Jerry Louie was terminated from his employment at CTFC.[11] The letter declared that Mr. Louie was “not happy with [his] job” and cited the at-will employment clause set out in Section VI of the EPM.[12] He had not been given any written warnings or progressive discipline,[13] although his supervisor had discussed various issues and grievances with him over time.[14] The AHO found that he was not terminated due to retaliation for Mr. Louie’s contacting the Tribal Employment Rights Office or a Councilwoman regarding grievances, and, although Mr. Louie was a member of the protected class in regard to age discrimination, age was not a factor in the decision to terminate him.[15] He timely appealed his termination through the chain of command at CTFC, but to no avail. He then properly and timely submitted notice that he wished to appeal his termination and requested a hearing before an Administrative Hearing Officer as set forth in the EPM.
The Honorable S. Renee Ewalt was assigned to hear Mr. Louie’s appeal. Before the AHO, CTFC filed a motion to quash a subpoena. AHO Ewalt set a briefing schedule but counsel for Mr. Louie needed additional time. Ultimately, AHO Ewalt, despite Mr. Louie’s late-filed brief, considered both parties’ briefings.[16] Without oral argument, she granted CTFC’s motion to quash. Subsequently AHO Ewalt held a full evidentiary hearing. In a 28-page decision replete with findings of fact and conclusions of law, AHO Ewalt upheld Mr. Louie’s termination and dismissed his appeal. At one point during the course of the appeal, AHO Ewalt may have told Mr. Louie that if he was dissatisfied with her decision he would have the right to further appeal to the Tribal Court.
I. ISSUES ON APPEAL
Preliminarily, CTFC has moved to dismiss this appeal, raising two grounds for its motion:
1. This court, like the Tribal Court, lacks subject matter jurisdiction to conduct any type of review of Louie’s termination by virtue of the structure of the CTEC/CTFC Employment Policy Manual and Supplementary Procedures.
2. CTFC, as a “Section 17 federal corporation,” [17] is entitled to sovereign immunity from suit in this case.
*141 Louie raises a number of issues, which can be encapsulated as follows:
1. The CTEC Employee Policy Manual and Supplementary Procedures do not apply to him, and thus he should be treated as a Tribal employee which entitles him to review of his termination by the Colville Tribal Court under the Colville Tribes’ Administrative Procedures Act, CTC § 2-4-1 et seq.; and the AHO’s statement that he was entitled to Tribal Court review should be enforced;
2. Louie was deprived of an impartial decision-maker to review his termination from employment with CTFC, which implicated the right of due process when the AHO refused to recuse herself.
3. As a result of the denial of due process to him, and even if the CTEC EPM applies to him, the Col-ville Tribal Civil Rights Act (“CTCRA”), CTC § 1-5-1 et seq., entitles him to relief via the Tribal Court because he was not afforded due process after being deprived of his employment, a property interest under Finley, supra.
II.STANDARD OF REVIEW
This matter concerns combined issues of law and fact.
Combined issues of law and fact are reviewed under the non-deferential de novo standard when the administration of justice favors the Court of Appeals. “Clearly erroneous” review is used in such questions when the administration of justice favors the Trial Court. CCT v. Naff, 2 CCAR 50, 2 CTCR 10, 22 ILR 6032 (1995).
Finley v. CTSC, supra (2006).
Here, issues presented by CTFC pertaining to subject matter jurisdiction are purely questions of law. The status of CTFC and the resultant applicability of the doctrine of sovereign immunity, however, present mixed questions of law and fact, with the factual issues not entirely determined in this record.
The issues presented by Louie pertain to the significance of the factual history of the establishment of CTEC and CTFC, which is not disputed; the applicability of Finley, supra, a question of law; the application of those factors to Louie’s particular termination from employment, a mixed question of law and fact; and the subsequent hearing(s) in front of the AHO, including her denial of Louie’s motion for recusal, again mixed questions of law and fact.
Since the issues presented herein are ones of combined law and fact, albeit with the facts either undisputed, or, in the case of the facts pertaining to CTFC’s sovereign immunity argument, undetermined, the de novo standard applies.
III.SUMMARY OF DECISION
As to the issues raised by CTFC:
1. Although this court has no subject matter jurisdiction under the Tribes’ APA to consider direct appeals from AHO decisions involving CTFC employee terminations, the Tribal Court, and in turn this court, retain subject matter jurisdiction to review cases when, as here, a claim of a violation of the CTCRA has been made.
2. Although CTFC, which claims to be a “Section 17 federal corporation,” may in fact possess some sovereign immunity by virtue of this alleged status, there has been inadequate development of the facts to establish this status in the record in this case, *142 whether before the AHO, the Tribal Court or this court.
As to the issues raised by Louie:
1. Since Louie agreed to become subject to the Employee Policy Manual, rather than refusing or declining to do so, he is bound by its provisions, which include review of his termination from employment by only an Administrative Hearing Officer and which allow no review by the Tribal Court system under the Tribes’ Administrative Procedures Act. Further, the AHO’s statement that Mr. Louie had a right of appeal to Tribal Court is of no consequence.
2. No showing has been made that the AHO was prejudiced when she declined to recuse herself after deciding a pretrial motion without oral argument, or that in doing so she demonstrated herself to be other than an impartial decision-maker.
3. Since a full evidentiary hearing occurred before the AHO, Louie enjoyed the benefit of notice and an opportunity to be heard, the two key elements of due process.
In sum, Louie is not entitled to the protection of the Tribes’ APA but instead to a hearing before an AHO. Louie’s particular challenge to the AHO’s impartiality was without basis in this record. And the AHO who heard his case afforded him due process of law, including both notice and an opportunity to be fully heard on the merits of his employment appeal.
Because CTFC has moved to dismiss the appeal for lack of subject matter jurisdiction, and because of sovereign immunity, this opinion will first address CTFC’s issues set forth above, and, because we deny CTFC’s motion to dismiss Mr. Louie’s petition, will then address the three issues raised by Louie.
CTFC’s ISSUES
1. Although this court has no subject matter jurisdiction under the Tribes’ APA to consider direct appeals from AHO decisions involving CTFC employee terminations, the Tribal Court, and in turn this court, retain subject matter jurisdiction to review cases when, as here, a claim of a violation of the CTCRA has been made.
Although it is true that Louie’s Petition for Review filed in the Tribal Court cited largely to the Tribes’ Administrative Procedures Act, CTC § 2-4-20, it also included a claim that the AHO’s decision “denied Jerry Louie of due process” (Petition, at p. 3, 1. 3) and was “[i]n violation of constitutional provisions” (Petition, at p. 3, 1. 10). It went on, in the prayer for relief, to cite not only CTC § 2-4-20 (the APA) but also CTC § 1—S—2(h), a section of the Colville Tribal Civil Rights Act (CTCRA) dealing with denial of equal protection and due process.[18]
APA direct review is simply unavailable, since there is no code section allowing it in this situation, as we will discuss more fully infra. But that does not end the inquiry.
CTFC has steadfastly maintained in this case that there is no set of circumstances under which review by the Tribal Court system can occur in CTFC employment termination appeals. We disagree.
*143 While we agree that the CTEC Employee Policy Manual and the mechanism for review of employment terminations by an administrative hearing officer has replaced any Tribal Court system review of such terminations under the Tribes’ APA, CTC § 2-4-20 (see discussion, infra, of Mr. Louie’s issues), this begs the question of whether, under any circumstances, the Tribal Court, and in turn this court on appeal from Tribal Court, has the power to consider any matter originating as a CTFC employment appeal to the AHO.
We note that the CTCRA provides:
1-5-3 Right of Action
Any person may bring an action for declaratory and/or injunctive relief only, against any executive officer or employee of the Confederated Tribes, or any employee or officer of any governmental agency acting within the jurisdiction of the Colville Tribal Court, to protect the rights set out in CTC § 1-5-2 of this Chapter.
1-5-4 Colville Tribal Court
Actions brought under CTC § 1-5-3 shall be brought only in the Courts of the Confederated Tribes of the Colville Reservation^] notwithstanding the fact that a court of another jurisdiction may have concurrent jurisdiction.
CTC §§ 1-5-3 and -4.
Thus, since Louie has pled a violation of CTC § l-5-2(h), albeit in the context of his employment with CTFC, he is entitled to seek relief in the Tribal Court. Specifically, Amendment X, to the Colville Tribes’ Constitution provides, in Article VIII, as follows.
Section 1: There shall be established by the Business Council of the Confederated Tribes of the Colville Reservation a separate branch of government consisting of the Colville Tribal Court of Appeals, the Colville Tribal Court, and such additional Courts as the Business Council may determine appropriate. It shall be the duty of all Courts established under this section to interpret and enforce the laws of the Confederated Tribes of the Colville Reservation as adopted by the governing body of the Tribes.
A claim under the CTCRA, which is part of the “laws of the Confederated Tribes of the Colville Reservation,” in accordance with the Tribes’ Constitution, is thus to be “interpreted” and “enforced” in and by the Tribal Court system. Otherwise stated, the Tribal Court and this court possess subject matter jurisdiction to hear Louie’s claims under the CTCRA arising out of the termination of his employment with the CTFC.
2. Although CTFC, which claims to be a “Section 17 federal corporation,” may in fact possess some sovereign immunity by virtue of this status, there has been inadequate development of the facts to establish this status in the record in this case, whether before the AHO, the Tribal Court or this court.
CTFC has made the claim that it is entitled, as a “Section 17 federal corporation,” to immunity from suit, at least in the context of this case. We disagree, primarily because the record in this case has not been developed either timely or sufficiently to determine (a) if CTFC is, in fact, a “Section 17 federal corporation,” or (b) what the parameters of sovereign immunity are in relation to such corporations.
Thus, we look again to the Colville Tribal Civil Rights Act, under which we have determined that the Tribal Court system has subject matter jurisdiction, and find the following additional provision:
1-5-5 Sovereign Immunitg
*144 When suit is brought in the Colville Tribal Court under CTC § 1-5-4 to protect rights set out in CTC § 1-5-2, the sovereign immunity of the Colville Tribes is hereby waived in the Courts of the Tribes for the limited purpose of providing declaratory and injunc-tive relief, where appropriate under the law and facts asserted to protect those rights; provided, the immunity of the Tribes is not waived with regard to damages, court costs, or attorney’s fees.
CTC § 1-5-5.
Clearly, then, the Business Council did not intend for the Tribes themselves to be immune from suit (for the limited relief as provided in CTC § 1-5-5) under the CTCRA. Nor, on the record in this case, are we able to come up with a rationale for holding that a wholly-owned corporation of the Tribes should be immune from suit— subject, again, to CTC § 1-5-5, which does not allow damages, court costs, or attorney’s fees but only declaratory and injunc-tive relief, which would include a declaration that the termination violated CTC § l-5-2(h) (due process) and reinstatement (albeit without back pay). We note that the discussion of CTFC’s purported status as a “section 17 federal corporation” has been, at best, sketchily developed. Here again the Code guides us by providing that the Court of Appeals “shall not ... entertain issues on appeal that have not been fully developed and ruled on by the Trial Court.” CTC § 1-2-106®.
Thus, while it is certainly possible that a future case may have a properly developed record on this important issue, this case does not.
We move, then, to the issues raised by Mr. Louie.
B. LOUIE’S ISSUES
1. Since Louie agreed to become subject to the Employee Policy Manual, rather than refusing or declining to do so, he is bound by its provisions, which include review of his termination from employment by only an Administrative Hearing Officer and which allow no review by the Tribal Court system under the Tribes’ Administrative Procedures Act. Further, the AHO’s statement that Mr. Louie had a right of appeal to Tribal Court is of no consequence.
As indicated in our discussion of the first of CTFC’s issues above, we agree that the APA does not apply and is not available for review of Mr. Louie’s termination. Here is our reasoning for that conclusion.
First, CTFC is correct in noting that the Tribes’ Code limits APA review to cases involving
Chapter 4-5 (On-Site Wastewater Treatment and Disposal); Chapter 4-6 (Mining Water Quality Protection); Chapter 4-7 (Forest Practices Water Quality); Chapter 4-8 (Water Quality Standards); Chapter 4-9 (Hydraulics Project Permitting); Chapter 4-15 (Shoreline Management); Chapter 10-1 (Tribal Employment Rights); and Chapter 10-3 (Indian Preference in Contracting) of the Colville Tribal Code.
CTC § 2-4-1. And, as CTFC also points out, all those matters concern actions by the Tribes itself, not actions by CTFC. See CTC § 2-4-20, defining “agency” as “any tribal board, commission, department or officer authorized by law to propose rules for adopting [sic] by the Business Council or to adjudicate contested cases.... ” CTC § 2-4-3(a). Further, the Code provides that the Tribal Court of Appeals “shall not have jurisdiction to order the Trial Court to take any administrative personnel ac *145 tions other th[a]n that permitted under applicable personnel policy.” CTC § 1-2-106(f). So, while it may perhaps be argued that CTFC’s Board of Directors is a “tribal board,” within the meaning of CTC § 2-4-20 defining an “agency,” it has not been established that CTFC’s Board of Directors is “authorized by law to propose rules for adoption] by the Business Council or to adjudicate contested cases.” (Emphasis supplied.)
Further, although it is unfortunate that the AHO apparently made the statement to Mr. Louie that he had a right to appeal any adverse decision of the AHO to Tribal Court, this cannot result in a such a right—at least not the right to a direct appeal of the AHO’s decision. To repeat, this court “shall not have jurisdiction to order the Trial Court to take any administrative personnel actions other th[a]n that permitted under applicable personnel policy.” Id. On the other hand, the AHO’s statement—according to our decision herein—was at least accurate at least insofar as Mr. Louie’s right to have the Tribal Court review a decision which violates due process is concerned, as we discuss, infra.
APA review is simply not available to terminated employees of CTFC.
2. No showing has been made that the AHO was prejudiced when she declined to recuse herself after deciding a pretrial motion without oral argument, or that in doing so she demonstrated herself to be other than an impartial decision-maker.
Mr. Louie has made no claim that the AHO was not selected in such a way that he was denied due process.[19] Rather, he complains that the AHO set a deadline for briefing on a pretrial motion brought by CTFC and decided the motion without oral argument. He then asked the AHO to recuse, and she denied that request.
First, as CTFC points out, Mr. Louie was not prejudiced by the AHO’s setting of a deadline for briefing, because ultimately it is clear that she considered Mr. Louie’s response to the pretrial motion, despite its having been submitted somewhat later than her briefing schedule had provided. This is made clear from the AHO’s Findings of Fact and Conclusions of Law; Order Dismissing Appeal, at page 3, lines 6 through 8.
Second, although Mr. Louie expected and would have liked a live hearing on the pretrial motion, and terms the AHO’s denial of the motion to quash a “sua sponte ” order, this is a miseharacterization. Citing Meusy v. Thomas, 10 CCAR 62, 5 CTCR 39, 38 I.L.R. 6063 (2011), Mr. Louie correctly points out that this court has expressed its disapproval of sua sponte rulings on substantive issues. But unlike a sua sponte order, an order issued on a motion without oral argument is not sua sponte. Rather, the test is whether procedural due process has been accorded the parties before a ruling is made, and whether the judicial officer has maintained not only a sense of fairness but also the appearance of it. See, e.g., Edwards v. Bercier, 10 CCAR 18, 5 CTCR 23, 37 I.L.R. 6009 (2009). Nothing in the Tribes’ Law and Order Code requires a hearing, *146 in person, on any given motion. What counts is that all parties be given notice of the motion and an opportunity to be heard—“heard,” that is, in the sense of having an opportunity to weigh in on the issue(s) presented in the motion; and the judge must consider the arguments made by all parties in a fair and impartial manner, giving his or her reasoning for the ruling, and demonstrating that he or she was being fair and impartial to both parties.
Thus, in relation to CTFC’s pretrial motion to quash, in due process terms, Mr. Louie had notice of the motion and an opportunity to be “heard” via his written submittals. He received “process” that was “due.” Thus, the AHO’s approach in receiving and considering briefs from both parties and then deciding the case without oral argument did not form a basis for the AHO’s disqualification as being “prejudiced” against Mr. Louie.
Moreover, it is well-settled in regard to recusal of judges for cause—and indeed codified by the Tribes’ Business Council with respect to Tribal Court at least—that once a discretionary ruling has been made in a given case, a party cannot wait until after a ruling adverse to himself and then move to disqualify the judge because the judge has been “unfair” in ruling against him.[20] While there is no specific code section pertaining to AHOs, by analogy it makes no sense that a request for disqualification be countenanced once a discretionary ruling—such as the AHO’s ruling on CTFC’s motion to quash—has been issued.
Although in this court’s experience such attempts to disqualify a judge after a discretionary ruling has been made are all too common, these attempts cannot be countenanced. Otherwise, the “forum-shopping” problem would wreak havoc on the administration of justice. Likewise, although the Colville Law and Order Code requires any affidavit of prejudice in the Tribal Court system to be heard by another judge, we see no reason why this should be extended to the AHO system, when, as here, a clearly discretionary ruling has already been made by the AHO who, then, by refusing to recuse, denies the motion for recusal herself.
We thus conclude that no due process violation occurred when the AHO refused to recuse and proceeded to hold the evi-dentiary hearing.
3. Since a full evidentiary hearing occurred before the AHO, Louie enjoyed the benefit of notice and an opportunity to be heard, the two key elements of due process.
Louie’s final argument is that he was not afforded due process because, among other things, he was not allowed to receive copies of the recordings of the AHO’s proceedings as provided in the Supplementary Procedures. Also part and parcel of his argument is that he simply was not afforded due process because Tribal Court did not allow a direct appeal under the APA. Additionally, he argued that the AHO determined the facts in the case in such a way that his termination was upheld. Noticeably absent, however, from his argument is that the evidence, disputed though it was, did not provide any basis for the AHO’s findings of fact *147 and in turn her conclusions of law leading to the upholding of his termination.
While we strongly disapprove of the fact that Mr. Louie has been unable to obtain copies of the recordings of the hearing at his own expense, since this is explicitly provided in the Supplementary Procedures, Administrative Hearings, Appeals, Paragraph ll,[21] nevertheless, we fail to see how, in this case, such a failure on the part of those conducting the hearing implicates due process. This is because there is no argument that the AHO’s findings of fact are not supported by substantial evidence. Additionally, there is simply no right to APA review in CTFC terminations because of the EPM.
As the parties have pointed out in their briefing, employer-employee relations, and whether an employee is “at-will”—i.e., serving at the will of the employer—or has some rights to dispute and seek relief from an employment decision, are questions the answer to which originating with the common law doctrine of master and servant. However, the “at-will” starting point in the analysis of any employer/employee relationship based on employment policy manuals and other public policy issues has been softened over the years in many jurisdictions. Here the AHO properly relied on a seminal Washington ease, namely, Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 685 P.2d 1081 (1984). We must emphasize that state case (common) law is to be considered guidance for us only in the absence of Colville Tribal Code or case law.[22] But the AHO could thus be and, we agree, was in this instance properly persuaded by the rationale enunciated in Washington’s Thompson v. St. Regis, supra. Indeed, a reading of this case is instructive. Generally speaking, in the absence of a contract, an employee serves at the will of the employer, who need give no reason for an employment decision adversely affecting the employee. Ibid., 102 Wash.2d at 228, 685 P.2d 1081. As explained by the Washington court in Thompson:
[I]f an employer, for whatever reason, creates an atmosphere of fair treatment with promises of specific treatment in specific situations and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship. We believe that by his or her objective manifestation of intent, the employer creates an expectation, and thus an obligation of treatment in accord with those written promises. See Restatement (Second) of Contracts, § 2 (1981) (promise is a manifestation of an intention to act or refrain from acting in a specified way, so made as to justify a promise in understanding that a commitment has been made).
Ibid., 102 Wash.2d at 280, 685 P.2d 1081.
That opinion went on to clarify:
It may be that employers may not always be bound by statements in employment manuals. They can state in a conspicuous manner that nothing contained therein is intended to be part of *148 the employment relationship and are simply statements of company policy.
Id. (emphasis supplied).
Thus we note with rapt attention that the drafter of CTEC’s EPM’s Part L, “Manual Objectives,” Paragraph C., “Use of Manual,” states: “This manual is to be used as a guide to operations and does not constitute an employment contract or a commitment to employment of a specific duration.” EPM at 3. And, Part V, entitled “Responsibility for Policies & Procedures,” states, “... An individual situation ... may be left to the discretion of the Chief Executive Officer or his/her desig-nee. ... In the absence of specific written policy, management always reserves the right to make decisions or take appropriate action in the best interests of the company.” EPM, Part V.A., at 11. And, significantly, in relation to Mr. Louie’s claim that he was denied a process of progressive discipline to which he was entitled, Part XII., “Discipline,” Paragraph A., “Company Rules,” states in part:
Violation of CTEC enterprise policies or rules may result in disciplinary action up to and including termination. CTEC may impose a more or less severe level of discipline for any offense or violation deemed by the company to be particularly serious.
EPM at 31. And Paragraph B., entitled “Disciplinary Guidelines,” says:
The following is [sic] merely intended as guidelines. CTEC reserves the discretion to deviate from the following under appropriate circumstances. Nothing in this section alters the at-will nature of the employment relationship between CTEC and its employees. This policy should not be construed as promising specific treatment in a particular situation.
Id. Similar permissive and non-mandatory language disclaiming any intent to create a promise of a course of action is included in Paragraph C., “Discipline”:
Discipline may follow a series of progressive steps that may be followed with a given employee. There are cases that might require immediate suspension and/or dismissal. The large majority of disciplinary actions, however, involve matters where the supervisor may, and should, apply progressive steps at working to correct the problem.
Ibid., at 32 (emphasis supplied).
Thus, in regard to Mr. Louie’s claim that he was denied the benefit of progressive discipline and should not therefore have been terminated, it certainly appears clear to this court that the AHO’s interpretation of the EPM was correct.
However, we also must note that there are several other areas of the EPM which sound in the nature of mandatory obligations on the part of the employer towards its employees in contest to the “guidelines” in the progressive discipline arena. These include the recitation of company policies in relation to conflict of interest, anti-nepotism, occupational safety and health (Part VIII.B., D., and E., respectively; EPM at 17-18); substance abuse (Part X.B.1. and 2.; EPM at 22-25); and harassment (Part X.C.; EPM at 26-28). The EPM also recites as company policy a commitment to abide by the Tribal Employment Rights Ordinance (“TERO”), which include the policies against discrimination on the basis of among other things, age. See Part VILA. We assume, also, that this would include protection from retaliation for reporting such violations to proper authorities, such as the Tribal Employment Rights Office and/or Business Councilmembers. For, in St. Regis Paper, supra, the at-will “presumption” has been somewhat circumscribed, for example, when the employment decision violates a *149 statute or is contrary to public policy. See Thompson v. St. Regis Paper Co., supra, 102 Wash.2d at 232-233, 685 P.2d 1081, and cases cited therein.
Mr. Louie made claims under the EPM’s anti-nepotism policy. He claimed, too, that he was retaliated against for reporting grievances to the Tribal Employment Rights Office as well as to a Tribal Councilwoman. He said that he was discriminated against on the basis of his age. And the AHO heard testimony, considered exhibits, and addressed them each fully in her written decision, ultimately concluding that nothing occurred justifying his reinstatement to employment on this basis. In fact, the AHO addressed each and every claim that Mr. Louie raised and continues to raise in this court.
It is quite apparent from the AHO’s Findings of Fact and Conclusions of Law; Order Dismissing Appeal that, in addition to a deliberation on several pretrial motions, a lengthy evidentiary hearing occurred and that testimony was had from nine (9) witnesses. As well, 21 appellant’s exhibits and 8 CTFC exhibits were considered. Moreover, the AHO, as we have previously stated, issued a 28-page decision with rulings on the pretrial motions and with 34 detailed findings of fact and 29 conclusions of law. While, as we have stated, we might find fault with the form of some of the findings of fact,[23] it appears that the AHO resolved any disputed issues of fact in favor of CTFC. This it was the AHO’s prerogative to do. And Mr. Louie does not challenge any particular finding of fact (nor, indeed, any particular conclusion of law).
Thus, the failure of CTFC or others associated with the hearing to provide copies of the tapes is not a due process violation leading to a CTCRA remedy of reinstatement and the other relief sought in Mr. Louie’s prayer for relief before the Tribal Court. Mr. Louie received a hearing. He had notice of it prior to its going forward. He presented evidence. And he received a decision, albeit one with which he was dissatisfied.
Mr. Louie was accorded due process of law.
Thus, Mr. Louie’s petition to declare a violation of the Colville Tribal Civil Rights Act based upon a denial of due process, and under Finley, supra, must be denied.
IV. SUMMARY AND ORDER
CTFC’s motion to dismiss for lack of subject matter jurisdiction should be denied. CTFC’s motion to dismiss on the basis of sovereign immunity should also be denied.
Jerry Louie was subject to the CTEC Employee Policy Manual, and the procedures in the Supplementary Procedures insofar as they did not create additional provisions beyond those in the EPM.
The AHO properly denied Mr. Louie’s motion to recuse and properly heard and granted CTEC’s pretrial motion, inasmuch as the AHO considered Mr. Louie’s as well as CTFC’s briefing, albeit without oral argument. He was not denied an impartial decision-maker or, in turn, due process on this basis.
Finally, Mr. Louie had the benefit of a full evidentiary hearing, and his unsuccess *150 ful request for copies of the recordings of the hearing bears no relevance to the issues he raises on appeal, nor to the propriety of his termination. He was, in sum, accorded due process of law.
Mr. Louie’s petition was properly dismissed by the Tribal Court, albeit for reasons different from ours.
IT IS THEREFORE ORDERED:
1. CTFC’s motion to dismiss for lack of subject matter jurisdiction is denied.
2. CTFC’s motion to dismiss on the basis of sovereign immunity is denied.
3. The Tribal Court’s dismissal of Jerry Louie’s petition for judicial review under the APA is affirmed.
4. The Tribal Court’s dismissal of Jerry Louie’s petition under the CTCRA is affirmed.

. The record does not establish whether this document was adopted by CTEC’s Board of Directors or its staff. Thus we respectfully disagree with the AHO’s statement at page 18, lines 21-22, that "to argue that the Supplementary Procedures are being used without the awareness or approval of the Board of Directors or Chief Executive Officer is pure nonsense.” This issue, while, as discussed infra, is not determinative in this case, it could well be crucial in future cases brought under the CTCRA.

. This provision was set forth in Part VI of the EPM. CTFC Exhibit 1 before the AU.

. EPM at Section XII(B), CTFC Exhibit 1 before the ALJ.

. CTSC Exhibit 1 before the ALJ, EPM Section 1(B).

. ALJ Finding of Fact No. 1.27 (testimony of Debi Condon). CTFC Exhibit 3 before the ALJ.

. Supplementary Procedures, Administrative Hearings, subsection B.14, CTFC Exhibit 3 before the AHO.

. EPM at p. 8, Part III; Supplementary Procedures at p. 1, under Generally, paragraph F.

. AHO Finding of Fact No. 1.27 (testimony of Debi Condon).

. Ibid.

. Such a statement is not really a "finding” but a recitation of the testimony.

. AHO Finding of Fact No. 1.2.

. AHO Finding of Fact No. 1.3.

. See AHO Finding of Fact Nos. 1.7 and 1.15.

. AHO Finding of Fact Nos. 1.13-1.15.

. AHO Finding of Fact No. 1.16.

. AHO Findings of Fact and Conclusions of Law; Order Dismissing Appeal, at p. 2, 11. 8-10.

. See, generally, CTFC’s Response Brief and Renewed Motion to Dismiss (filed December 22, 2014).

. CTC § 1—5—2(h) provides:
Civil Rights of Persons Within Tribal Jurisdiction. The Confederated Tribes of the Colville Reservation in exercising powers of self-government shall not:
* * *
(h) Deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law[.] ..,

. We note with some concern that the Supplementary Procedures state that the AHO "may be selected from a panel of [AHOs] retained by CTEC [now CTFC]...." Supplementary Procedures, Administrative Hearings, Appeals, Paragraph 15, at p, 3. Thus, since an AHO serves essentially at the pleasure of CTFC, we wonder if such an AHO would be an impartial decision-maker. But since this issue was neither raised nor briefed in this case, we do not address it here.

. CTC § 1-1-143 provides: “Any party to any legal proceeding ... may accomplish a change of assignment of his case from one judge to another upon filing an Affidavit of Prejudice with the Court, giving satisfactory reasons for the change. The Affidavit shall be in written form and must be filed with the Court before any trial action whatever has been taken by the initial Judge. The initial Judge shall refer the affidavit to another judge for decision.” (Emphasis supplied.)

. “All proceedings shall be recorded, and either party may obtain a copy of the tapes at his/her own expense, except where the AU determines that a portion or portions of the hearing must remain sealed to protect employee confidentiality.”

. CTC § 1-2-11 provides: “In all cases the Court shall apply, in the following order of priority unless superseded by a specific action of the Law and Order Code, any applicable laws of the Colville Confederated Tribes, tribal case law, state common law, federal statutes, federal common law and international law,”

. We once again emphasize that a "finding of fact” prefaced with the phrase, "X testified that ...” is not actually a "finding” of fact but a recitation of the testimony. Nevertheless, Mr. Louie makes no issue of the sufficiency of the evidence in supporting the conclusions of law, which are in the correct format and which along with the Order section, as we have stated, supra, made clear whose testimony was accepted and whose was rejected.