OWENS, J. (dissenting)
¶26 "A client has a right to discharge a lawyer at any time, with or without cause." RPC 1.16 cmt. 4. This long-standing ethical rule serves the important public policy of promoting client trust, attorney loyalty, and public confidence in attorney-client relationships by mitigating the power differential between client and attorney in favor of the client. This mandate applied without exception to every attorney licensed to practice law in Washington-until now. In opening the door for terminated attorneys to sue their former clients, the majority upends a hallowed policy and hallmark facet of attorney employment. Because RPC 1.16 clearly memorializes a client's unfettered right to terminate an attorney without reprisal, I would hold the remedy of contract damages and the tort of wrongful discharge unavailable as matters of law. If the majority believes an exception to RPC 1.16 is merited for in-house counsel attorneys, the proper method for effectuating such a change would be through rulemaking.
¶27 Washington law has long held that a client may terminate an attorney at any time and for any reason, including wantonly or out of caprice. Wright v. Johanson, 132 Wash. 682, 692, 233 P. 16 (1925) ; Kimball v. Pub. Util. Dist. No. 1 of Douglas County, 64 Wash.2d 252, 257, 391 P.2d 205 (1964). "[I]t follows as a corollary that the client cannot be compelled to pay damages for exercising a right which is an implied condition of the contract."
*688 Wright, 132 Wash. at 692, 233 P. 16. Though the rule is a "harsh and stringent one against the attorney," it is "necessary for the protection of the client in particular and the public in general." Kimball, 64 Wash.2d at 257, 391 P.2d 205. This court codified the rule when it promulgated RPC 1.16 as part of the RPCs in 1985.
¶28 Whatever the nature of the relationship between Jared Karstetter and the King County Corrections Guild (Guild), Karstetter remained nonetheless an attorney subject to the distinct ethical rubric binding on our profession. Insofar as Karstetter's contract with the Guild contravened RPC 1.16,1 would hold it unenforceable as violative of public policy.
*1194 LK Operating, LLC v. Collection Grp., LLC, 181 Wash.2d 48, 85-89, 331 P.3d 1147 (2014). The remedy of contract damages is plainly anathema to the mandate memorialized in RPC 1.16 safeguarding a client's right to discharge an attorney. Accordingly, I would hold that the Karstetters failed as a matter of law to state a breach of contract claim for which relief can be granted.
¶29 Likewise, the tort of wrongful discharge is inappropriate in the attorney context because attorneys are not governed by the general at-will doctrine, but by a specific codified rule that expressly protects a client's right to release an attorney for any reason. See Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 232, 685 P.2d 1081 (1984). Even the California Supreme Court observed that "a majority of courts have refused to permit the maintenance of such suits on the ground that they pose too great a threat to the attorney-client relationship." Gen. Dynamics Corp. v. Superior Court, 7 Cal. 4th 1164, 1182, 876 P.2d 487, 32 Cal. Rptr. 2d 1 (1994). Accordingly, I would hold that the Karstetters failed as a matter of law to state a wrongful discharge claim for which relief can be granted.
¶30 The majority purports to circumscribe its ruling by allowing terminated in-house counsel attorneys to bring contract and wrongful discharge suits "provided these suits can be brought without violence to the integrity of the attorney-client relationship." Majority at 1185. How such a *689 parameter will be enforced, however, remains unclear. Thirty-five years ago, this court saw fit to eliminate any such risk to the integrity of the attorney-client relationship when it promulgated RPC 1.16 as part of the RPCs. Contrary to the majority's stark characterization of the time period from which the RPCs hail, 1985 can hardly be considered the Victorian Era. Rather, the underlying policy concerns and objectives of RPC 1.16 -ensuring trust and loyalty between attorneys and clients, and mitigating the inevitable power differential-remain as relevant today as ever.
¶31 In the majority's view, in-house attorneys are simply different and thus deserve different treatment under the law. Never before, however, has an exception to RPC 1.16 been enunciated for any subset of attorneys. Though this court possesses authority to promulgate, interpret, and enforce the RPCs, Hizey v. Carpenter , 119 Wash.2d 251, 261, 830 P.2d 646 (1992), pronouncement via judicial opinion is not the preferred method for amending them. See In re Disciplinary Proceeding Against Haley, 156 Wash.2d 324, 346-47, 126 P.3d 1262 (2006) (Sanders, J., concurring) ("If we conclude that [a rule needs to be changed], we should simply rewrite the rule .... Lawyers should not have to read slip opinions to divine their professional obligations."). When it comes to carving out a dramatic new exception to the RPCs, best practice would be to engage in rulemaking, which provides due notice through publication of proposed rules and opportunity for public comment. GR 9(g). Modifying the mandate of RPC 1.16 through this case undermines both the purpose and spirit of rulemaking.
¶32 Though I do not extol the Guild for capitalizing on the mandate of RPC 1.16 after 20 years of complicity in contracts establishing mutual expectations of security in Karstetter's position, the onus was nevertheless on Karstetter as a licensed Washington attorney to know and uphold the rules governing attorney conduct. I would not *690 grant him an equitable exemption after the fact, as the majority elects to do. I respectfully dissent.
Johnson, J.
Gordon McCloud, J.